**William L. SMITH and Jacquelyn Smith, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**Nos. 87–1310, 87–1501.**

United States Court of Appeals, Fifth Circuit.

July 27, 1988.

---

Scott Smith, William L. Smith, Lancaster Smith, Smith, Smith & Smith, Dallas, Tex., for plaintiffs-appellants.

Douglas G. Coulter, William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen, Robert A. Bernstein, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before WISDOM, REAVLEY, and JOLLY, Circuit Judges.

WISDOM, Circuit Judge:

In this case we decide whether the plaintiffs/appellants, Mr. and Mrs. William L. Smith, are entitled to recover attorney's fees from the Internal Revenue Service. Our decision turns on whether the IRS's appraisal of a building owned by the Smiths was "not substantially justified". The district court examined both the Smiths' position and IRS's position and concluded that the Smiths had not met their burden for recovering attorney's fees. Because we find no error in the district court's approach, we affirm.

## I.

The building in question is a single-story concrete structure in Dallas with a white brick veneer. It covers most of a 12,400 square foot lot at the corner of St. Paul and Cadiz Streets in downtown Dallas. The original owner used it to process and store film. As a result, the building has unusual air-conditioning capacity and a specialized electrical system. The building also contains "vaults" that were once used to store explosive chemicals.

The Smiths bought the land and the building in 1981 for $280,000. After spending $76,000 to remodel the building, the Smiths are now able to use it as a law office. Although the neighborhood surrounding the building was marginal in 1981, the Smiths' property is only a short

walk from the city's prime business district and the state and federal courthouses. By all accounts the Smiths are pleased with both the building and its location.

In their original tax return for 1981, the Smiths gave the building a pre-renovation basis of $285,512. The land itself, in the Smiths' view, was a $5,512 liability. The IRS audited the Smiths' return for 1981. After a preliminary examination, Revenue Agent Nancy Anderson rejected the allocation used by the Smiths and assigned the building a depreciable basis of $49,840.[1] Several months later, the IRS conducted a more formal appraisal. IRS employee Armando Rodriguez considered five comparable sales in the area and concluded that the building had a depreciable basis of $92,500.

In 1984 the Smiths filed an amended income tax return for 1981. In this return they allocated $277,500 to the building and $2,500 to the land. Because of other changes in the amended return, the Smiths requested a refund for tax year 1981. The IRS admitted that it owed the Smiths a refund, but reduced the amount due by refusing to allow the Smiths to depreciate their building from a basis of more than $92,500.

In December 1984, the Smiths sued the IRS in the Northern District of Texas (the 1984 lawsuit). The Smiths requested a refund of $12,833 for the year 1981. In addition, the Smiths asked the court to "stay, abate, and/or enjoin any assessment" for 1978 and 1979. The controversy with respect to these years arose from deductions the Smiths took for losses connected with their investment in an entity called "New Star Venture". The IRS rejected these deductions, and eventually the Smiths accepted an arrangement that limited their deduction to the amount of their actual investment in 1978. The IRS and the Smiths signed a closing agreement for the "New Star Venture" dispute in early 1983. The Smiths' complaint in the 1984 lawsuit sought to prevent the IRS from collecting penalties or interest for the invalidated portion of the "New Star Venture" deductions.

In December 1986 the Smiths filed a second suit against the IRS (the 1986 lawsuit). This suit involved only the Smiths' depreciation deduction for 1982. The Smiths again gave their office building a basis of $277,500. This worked out to a refund of $14,934. In both lawsuits the Smiths asked the court for attorney's fees.

The district court awarded summary judgment to the IRS on the issues pertaining to 1978 and 1979. The allocation of basis question was tried to a jury in February 1987. By the time the jury rendered its verdict, the IRS had raised its estimate of the building's 1981 value to $108,000.[2] The Smiths, meanwhile, had come down to "at least $250,000". After hearing the evidence, the jury decided the building had been worth $172,000. As a result, the Smiths were entitled to a refund of $3,459.

. In the 1986 lawsuit, the district court granted the government's motion for summary judgment based on the outcome of the 1984 lawsuit. This gave the Smiths a further refund of $4,013. All in all, the two lawsuits brought the Smiths only $7,472 of the $27,767 they originally sought. Nonetheless, the Smiths renewed their request for attorney's fees.

On June 12, 1987, the district court denied the Smiths' motion for fees. The district court found that the Smiths' recovery was not "a substantial victory with respect to the amount in controversy". The court also noted that:

> [a]s a practical matter, the jury's finding that the land was valued at $111,000 and the building at $172,000 represents the midpoint between the parties' claimed allocations and indicates that the IRS's position was, to a certain extent, reasonably justified.

---

1. Anderson apparently derived this figure from the building's assessment for local property tax purposes. The IRS makes no attempt to defend Anderson's analysis or the result she reached.

2. The IRS changed its position in 1986 after receiving the report of Charles Magee, a professional appraiser hired by the IRS in connection with the 1984 lawsuit. Magee testified for the IRS at trial.

The Smiths have appealed.[3]

## II.

▮ Before turning to the question of attorney's fees, we first address the Smiths' arguments with respect to 1978 and 1979. The Smiths contend that the closing agreement is ambiguous and must be read in the light of extrinsic evidence.[4] This argument is without merit.

A closing agreement is interpreted under ordinary principles of contract law.[5] In this case, the closing agreement is limited on its face to a determination of the Smiths' 1978 and 1979 losses from New Star Venture. The agreement does not purport to apply this determination to the Smiths' taxable income for those years, nor does it address the question of penalties and interest. The limited scope of the closing agreement does not make it ambiguous, however, because the calculation of taxable income and the assessment of penalties and interest are provided for by law.[6]

▮ The closing agreement does not bar the IRS from demanding penalties and interest from the Smiths. On the contrary, the agreement demonstrates that the Smiths underpaid their income tax for 1978 and 1979 by overstating the loss they sustained on their investment in "New Star Venture". The district court correctly granted summary judgment to the IRS on this issue.[7]

## III.

In tax cases, a litigant may not recover attorney's fees from the government unless he satisfies the district court that he is a "prevailing party" as defined by the Internal Revenue Code. Section 7430 of the Code now provides that a "prevailing party" must establish "that the position of the United States ... was not substantially justified".[8] In addition, the taxpayer must "substantially prevail" with respect to either "the amount in controversy" or "the most significant issue ... presented".[9] We conclude that the Smiths have not met the first of these two requirements.[10]

---

3. This Court has granted the Smiths' motion to consolidate the 1984 and 1986 lawsuits on appeal.

4. In particular, the Smiths point to a January 23, 1983, cover letter from Mr. Smith stating that "this Agreement is the finality to any claim by the IRS for the years 1978 and 1979".

5. *United States v. Lane*, 303 F.2d 1, 4 (5th Cir. 1962).

6. For this reason, as the IRS notes, the applicable Revenue Procedure does not require explicit agreement on the taxpayer's interest liability "[u]nless there is some issue with respect to [it]". Rev.Proc. 68–16, 1968–1 C.B. 770. Even if extrinsic evidence were necessary to interpret the closing agreement, we note that Mr. Smith's cover letter does not itself address penalties and interest.

7. The Smiths also raise an estoppel argument with respect to 1978 and 1979. This argument is based on the notion that the IRS had a duty to notify the Smiths that it was "rejecting" their cover letter. Because the cover letter does not purport to amend or alter the closing agreement, and because it is arguably consistent with the IRS's interpretation of the closing agreement, the Smiths' estoppel argument is untenable. *See Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60–61, 104 S.Ct. 2218, 2224–25, 81 L.Ed.2d 42 (1984); *Schweiker v. Hansen*, 450 U.S. 785, 789, 101

S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) (per curiam) (the United States may not be estopped in civil litigation without a showing that government agents engaged in "affirmative misconduct").

8. 26 U.S.C. § 7430(c)(2)(A)(i) (Supp.1988). This is the test that the district court applied to the 1984 lawsuit. Strictly speaking, the phrase "not substantially justified" applies only to the 1986 lawsuit. Congress amended section 7430 in the Tax Reform Act of 1986. Previously, a taxpayer who sought attorney's fees had to show that the government's position was "unreasonable". The change apparently came about as part of an unsuccessful effort by the Senate Finance Committee to make section 7430 conform to the prevailing interpretation of the Equal Access to Justice Act, 42 U.S.C. § 1988, by requiring the government to prove that its position *was* substantially justified. *See* 1986 U.S. Code Cong. and Adm.News 4887–90. The difference in phraseology does not help the Smiths; if the IRS's position was "substantially justified", it was *a fortiori* not "unreasonable".

9. 26 U.S.C. § 7430(c)(2)(A)(ii).

10. For this reason we need not review the district court's finding that the Smiths have not "substantially prevailed with respect to the amount in controversy". We note, however, that the Smiths obtained a change in basis that

In deciding whether the position of the United States was substantially justified, we "focus on the IRS's position at the time the taxpayer's petition was filed".[11] The relevant appraisal in this case is the one Armando Rodriguez performed for the IRS.[12] Mr. Rodriguez used both comparable sales and an income-stream analysis to reach his conclusion that the building was worth $92,500 in 1981. The Smiths must show that the IRS was unjustified in adopting the Rodriguez report.

The Smiths contend that Rodriguez's estimate was unreasonable because $92,500 is considerably less than the value of the building as determined by the jury. "[T]he court is not required to remain blind to what everyone else, including the jury, could see, namely that a market valuation of the building below $10 a square foot was inherently unreasonable ...". That their own estimate was well *above* the jury's figure does not trouble the Smiths. The Smiths maintain that the district court erred when it "considered and weighed [the] Smiths' position against the government's position.

We disagree. The district court correctly viewed the government's final adminis-trative position in context. The record suggests that the Smiths own an unusual building in a neighborhood with great but uncertain potential for growth and development. The inaccuracy of the Smiths' own estimate is relevant because it tends to confirm the difficulties that Rodriguez faced when appraising the building for the IRS. The more difficult it is to appraise a building, of course, the more leeway we must give the IRS before concluding that its position is "unreasonable" or "not substantially justified".[13]

The Smiths also challenge Rodriguez's methodology. The Smiths insist that Rodriguez should have used replacement cost analysis, and they question the IRS's decision not to include a nearby parking lot in its comparable sales figures. These arguments were presented to the jury together with the government's answers.[14] The Smiths now contend that the government's answers were "patently frivolous". This is, in effect, a direct attack on the jury's verdict. The jury found—and we agree—that Rodriguez's methodology was not so flawed as the Smiths suggest.[15] There is inevitably a subjective aspect to the shaping of any appraisal; the Smiths have failed to show that the IRS's acceptance of

---

will favorably affect their tax returns over a fifteen year period. To some extent this enhances the importance of their $7,472 recovery.

11. *Powell v. C.I.R.,* 791 F.2d 385, 392 (5th Cir. 1986).

12. Under *Powell,* the initial estimates made by Nancy Anderson in July 1983 "need not be examined". 791 F.2d at 392. Rodriguez began his appraisal in November 1983. By the time the Smiths filed their first lawsuit in December 1984, roughly a year had passed during which the IRS had consistently used the figure reached by Rodriguez.

13. We are also aware that the IRS faces a backlog in Tax Court and will frequently settle with taxpayers by "splitting the difference". *See* Note, *Award of Attorney Fees in Tax Litigation,* 19 Val.U.L.Rev. 153, 168 (1984). When a taxpayer takes an indefensible deduction, the IRS may be "substantially justified" in adopting a position that is designed to reach a fair settlement. We need not decide this issue here, however, because we are persuaded that the unique construction of the Smiths' building and the character of the neighborhood presented special valuation problems that account for the differ-ence between Rodriguez's appraisal and the verdict. In view of these problems, it cannot be said that the government's estimates "either rang hallow or were specious". *Cf. Huckaby v. United States Dep't of Treasury,* 804 F.2d 297, 299 (5th Cir.1986).

14. Rodriguez testified that replacement cost analysis would distort the value of the Smiths' building. For example, the film vaults might be expensive to replace, but they added little to the building in its most efficient use. As a law office, Rodriguez concluded, the building was worth less than the sum of its parts. The government's valuation expert testified that the neighboring parking lot was properly excluded from the comparable sales figures because it had not been sold in an arms-length transaction.

15. We base our agreement upon an independent review of the record. We are unsympathetic to the Smiths' attempt to relitigate essential questions of fact and credibility on appeal, but, at the same time, we cannot accept the IRS's suggestion that "[t]he use of [an] independent expert's appraisal is by itself a sufficient basis to reject any claim that the Government's litigating position was unreasonable".

the Rodriguez report was "not substantial-ly justified".

### IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.