RYAN, Circuit Judge.
 

 Plaintiff, Spendthrift Farm, Inc., appeals the district court’s order reversing a bankruptcy court decision which sustained objections to statutory interest for past taxes arising under I.R.S. § 6601(d)(1). This ap
 
 *406
 
 peal addresses whether the district court correctly found that the closing agreement between the IRS and the plaintiff did not preclude the IRS from assessing restricted interest. For the following reasons, we affirm.
 

 I.
 

 This ease arises from the IRS’ proof of claim in the Chapter 11 Bankruptcy proceedings of Spendthrift for taxes and interest assessed against Spendthrift. The IRS audited Spendthrift in 1987 and proposed increases in Spendthrift’s taxable income for taxable years 1981-1984. Charles Hembree, Spendthrift’s tax attorney, and Gerald Huber, an IRS appeals officer, reached a tentative settlement, pursuant to 26 U.S.C. § 7121, in the spring of 1989. In April 1989, Huber sent Hembree a proposed settlement which included IRS claims against Combs Stallions, a corporation related to Spendthrift. Under the proposed settlement, Spendthrift would concede proposed increases in its taxable income in exchange for the IRS conceding its asserted claims for increases in Combs Stallions’ taxable income.
 

 On May 3, 1989, Hembree telephoned Huber concerning the tentative settlement and proposed changes in the language of the agreement. Hembree claims he told Huber that he wanted it made clear in the agreement that Spendthrift was not liable for statutory interest arising under 26 U.S.C. § 6601(d)(1), known as “restricted interest,” for the 1981 and 1982 tax years. In contrast, Huber maintains that the telephone conversation was brief and that although Hembree discussed restricted interest, he told Hembree that he was not sure whether restricted interest was involved. Huber denies telling Hembree that he was not looking for restricted interest and claims that he thought Hembree’s problem was with the bankruptcy procedures. Nevertheless, Huber asked Hembree to pencil in the proposed changes and send them to him.
 

 Hembree returned the draft agreement with a handwritten proposed change to Huber. The change added the statement, “Solely for purposes of determining the amounts of net operating loss carryovers to years after the year [1984],” at the beginning of the sentence “[t]he taxable income of Spendthrift Farm, Inc., shall be increased by $1,844,270, $2,467,730, $1,292,-935 and $784,891 for the years [1981], [1982], [1983], [1984], respectively.” Hem-bree stated in a cover letter to Huber that the change was needed in the agreement so that Spendthrift would not be liable for any outlay of funds except for a tax deficiency in 1984, plus interest. Huber thought the proposed language had no effect on restricted interest, and agreed to its addition.
 

 The bankruptcy court approved the proposed closing agreement and the IRS executed it on June 5, 1989.
 

 In October 1989, the IRS submitted a proof of claim to the bankruptcy court in the amount of $1,198,688.47 for restricted interest. Spendthrift objected to this claim in November 1989, arguing that the closing agreement foreclosed the claim. Spendthrift maintained that although not specifically stating it in the cover letter or agreement, Hembree added the “solely” language to the closing agreement in order to prevent Spendthrift from being liable for restricted interest. In response, the IRS contended that because the closing agreement did not specifically mention that the IRS waived restricted interest, such interest was not waived.
 

 Following a hearing in January 1990, the bankruptcy court sustained Spendthrift’s objection to the assessment of the IRS’ claim for statutory interest finding that the closing agreement precluded restricted interest. The IRS filed a motion to alter and amend the order, but the bankruptcy court overruled the motion. The IRS appealed to the district court.
 

 The district court reversed the decision of the bankruptcy court, finding that the closing agreement did not bar the IRS’ claim for restricted interest. The court also remanded the case back to the bankruptcy court for a determination of the amount of restricted interest due because “the agreement bars the use of the figures conceded by Spendthrift in the closing
 
 *407
 
 agreement in the calculation of the restricted interest.” Spendthrift appeals.
 

 II.
 

 Spendthrift argues that the plain language of the closing agreement constituted an explicit waiver by the IRS of its statutory right to restricted interest. However, the government argues that the district court correctly held that the closing agreement did not preclude the IRS from assessing restricted interest against Spendthrift because restricted interest was not a matter expressly agreed upon in the agreement.
 

 The IRS “is authorized to enter into an agreement in writing with any person relating to the liability of such person ... in respect of any internal revenue tax for any taxable period.” I.R.C. § 7121(a). Section 7121(b) provides that such an agreement is final and conclusive, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact. Thus, closing agreements are binding on the parties as to the matters agreed upon and may not be modified or disregarded in any proceeding unless there is a showing of fraud, malfeasance, or misrepresentation of a material fact.
 

 Spendthrift maintains that the closing agreement precluded liability for restricted interest because of the “solely” language. It claims that it is not necessary that the magic words, “restricted interest” appear in the agreement in order that it operate as a waiver of the IRS’ claim for such interest. However, closing agreements generally do not determine penalties and interest. Thus, “a closing agreement which does not mention interest or penalties does not bar a subsequent recovery by the taxpayer or assessment by the government.” 14 J. Mertens,
 
 Law of Federal Income Taxation,
 
 § 52.09. Moreover, “[a] closing agreement is interpreted under ordinary principles of contract law,” and, generally “is limited on its face.”
 
 Smith v. United States,
 
 850 F.2d 242, 245 (5th Cir.1988).
 

 We find
 
 Smith
 
 persuasive. In
 
 Smith,
 
 the Fifth Circuit found that the closing agreement between the parties did not bar the IRS’ claim for interest and penalties because the agreement made no mention of interest and penalties. The court concluded that because penalties and interest were provided for by statute, a waiver should have been included in the agreement in order for the IRS’ claim to be foreclosed by the closing agreement.
 
 Id.
 
 at 245.
 

 Similarly, in
 
 Zaentz v. Commissioner,
 
 90 T.C. 753 (1988), the tax court held that if a closing agreement does not specifically cover an issue, the IRS is not foreclosed from claiming it. The tax court found that “section 7121 does not bind the parties as to the premises underlying their agreement; they are bound only as to matters agreed upon.”
 
 Id.
 
 at 761. The court also noted that “under section 7121 it is assumed that unless there is an issue with respect to interest liability, the parties intend that interest will be collected or allowed in addition to the amounts of tax or refund determined pursuant to the terms of the closing agreement.”
 
 Id.
 
 at 766 n. 4.
 

 Therefore, while that is no “magic words” requirement, for the closing agreement to cut off the IRS’ claim for restricted interest, there must be a specific waiver in the closing agreement. In this case, there is no such waiver. The closing agreement between Spendthrift and the IRS does not mention interest or penalties.
 

 Because the plain language of the closing agreement is unambiguous, we find that the district court properly held that the IRS did not waive its statutory right to restricted interest, and, as a matter of law, the IRS is entitled to collect such interest under I.R.C. § 6601(d).
 

 AFFIRMED.