9 F.3d 1555
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Victor E. VAN DUZER, and Jane N. Van Duzer, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 92-70320.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1993.
Decided Oct. 14, 1993.
 
 Before: HUG, FARRIS, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Victor and Jane Van Duzer appeal from the Tax Court's order denying their motion for reasonable litigation and administrative costs under 26 U.S.C. § 7430. We have jurisdiction over the timely appeal pursuant to 26 U.S.C. § 7482. We affirm.
 
 
 3
 The sole issue is whether the position of the United States in Van Duzer's tax redetermination suit was "substantially justified." 26 U.S.C. § 7430(c)(4)(A)(i). The phrase "substantially justified" means "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988); Huffman v. Commissioner, 978 F.2d 1139, 1147 (9th Cir.1992). We review the Tax Court's determination of whether the government's position was "substantially justified" for an abuse of discretion. Bertolino v. Commissioner, 930 F.2d 759, 761 (1991).
 
 
 4
 A court properly exercises its discretion in denying litigation costs when the case presents a close question of law, see TKB Int'l, Inc. v. United States, No. 91-55685, slip op. 5573, 5591 (9th Cir. June 3, 1993), or when the case turns on the credibility of witnesses. Awmiller v. United States, No. 91-35913, slip op. 8399, 8402 (9th Cir. August 5, 1993). Because this case presented a close question of law and turned on the credibility of witnesses, we cannot say the Tax Court abused its discretion in finding the government's position was substantially justified.
 
 
 5
 The central question at trial was whether a portion of the windfarm purchase price should be allocated to warranties made by the seller, FloWind. This is a question of law, Autrey v. United States, 889 F.2d 973, 981 (11th Cir.1989), and it is close. The answer hinges on whether there was a substantial risk of nonperformance of the windfarms. In other words, whether there was a significant likelihood that the warranties would "kick in" and, in effect, reimburse part of the purchase price. The Tax Court noted that neither party cited prior cases which dealt directly with this issue.
 
 
 6
 The warranties guaranteed that the windfarm would produce no less than 50 percent of its designed output per year for the first five years, and an average of 67 percent of designed projected output during the first three years. FloWind also warranted that the wind turbine generators would be free from defects for five years, would be available for operation at least 90 percent of each year for five years, and would be capable of operating at 90 percent of projected power performance for one year. Van Duzer acknowledges that he would not have purchased the windfarms without the warranties.
 
 
 7
 Van Duzer argues that standard industry warranties add little or nothing to the value of the warranted asset. Van Duzer relies on Houchins v. Commissioner, 79 T.C. 570, 593-94 (1982), and Grodt & McKay Realty, Inc. v. Commissioner, 77 T.C. 1221, 1239 (1981). "We agree that Houchins and Grodt are instructive, but perhaps not in the way [Van Duzer] would like." Autrey, 889 F.2d at 981. Both Houchins and Grodt involved investments in cattle breeding tax shelters. In both cases, the Tax Court considered whether the value of the taxpayer's investment included certain contract rights associated with the cattle themselves. The Tax court concluded that these rights were valueless. "Although Houchins and Grodt cannot stand for the proposition that intangible contract rights must add value to an associated tangible asset, nevertheless, we find Houchins and Grodt useful because they illustrate a simple truth: a valueless intangible contract right can add no value to an associated tangible asset." Id.
 
 
 8
 Where there is a substantial risk of nonperformance of the warranted asset, however, and the warranty shields the purchaser from all or part of the investment's risks, then the warranty becomes a valuable intangible contract right for which no tax deductions or credits are allowable. See Cooper v. Commissioner, 88 T.C. 84, 113 (1987). If the Tax Court had concluded, as a matter of law, that the warranties may add some value, then it would have been a question of fact what the correct valuation should be. Autrey, 889 F.2d at 981. It was therefore proper for the experts to debate the proper allocation of the purchase price between tangible and intangible assets.
 
 
 9
 Van Duzer argues that the government's reliance on its expert's opinion was unreasonable. The government certainly can not immunize itself from liability for an otherwise unjustified position simply by shrouding itself in an expert's opinion. Minahan v. Commissioner, 88 T.C. 492, 500 (1987); Frisch v. Commissioner, 87 T.C. 838, 841 (1986). But where there is an "honest difference of opinion between experts," the government's position cannot be considered unreasonable. Hursh v. Commissioner, T.C.M. (P-H) p 90,184, at 90-833 (1990). Courts often accept and adopt figures reached by the Commissioner's experts. See, e.g., Baigent v. Commissioner, 53 T.C.M. (CCH) 1221, 1229 (1987); Cooper, 88 T.C. at 110 & n. 14; Falsetti v. Commissioner, 85 T.C. 332, 350 (1985).
 
 
 10
 The Tax Court noted that issues of allocation and valuation "present difficult questions" especially where the assets being valued involve new technologies, as here. Van Duzer challenges the Tax Court's "new technology" rationale, arguing that it is: 1) unsupported by precedent, 2) contrary to congressional intent to encourage investment in alternative energy sources, and 3) a post-hoc justification. We reject the arguments.
 
 
 11
 New technology is, by definition, untested by the rigors of time. There is necessarily a lack of performance data. But valuation of the warranties must be based upon some estimate of the risk of nonperformance. Without an established track record to reference, experts can only "guesstimate." We are hesitant to impose litigation costs upon the government when the valuation question is close. See TKB Int'l, No. 91-55685, slip op. at 5591; Smith v. United States, 850 F.2d 242, 246 (5th Cir.1988).
 
 
 12
 Van Duzer is certainly correct in asserting that Congress intended to encourage investment in alternative energy sources such as wind energy. But the assertion begs the question, which is: "Did Van Duzer invest the amount claimed in an alternative energy source, or was a portion of the purchase price attributable to an intangible warranty asset?"
 
 
 13
 Even though the government did not formally frame its litigation position in terms of the "new technology" rationale, the record reflects that the government's initial position included a warranty allocation theory. That the technology was "new" goes only to the legal question of whether any portion of the windfarm purchase price should be allocated to the warranties.
 
 
 14
 Finally, we recognize that some of the assumptions made by the government's experts were discredited by the Tax Court. That is why the government lost. But losing does not mean substantially unjustified. Pierce, 487 U.S. at 569. The Tax Court was careful to emphasize that the case turned, in large part, on its evaluation at trial of the credibility of the expert and nonexpert witnesses. Cf. Awmiller, No. 91-35913, slip op. at 8402.
 
 
 15
 The Tax Court did not abuse its discretion in finding that the government's position was substantially justified.
 
 
 16
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3