Edward C. LAST and Nancy
L. Last, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 93–675T.

United States Court of Federal Claims.

Nov. 21, 1996.

Richard A. Houston, Anaheim Hills, California, for plaintiffs.

Michael F. Cox, Tax Division, United States Department of Justice, with whom were Loretta C. Argrett, Assistant Attorney General, Mildred L. Seidman, and David Gustafson, Washington, DC, for defendant.

## OPINION

MARGOLIS, Judge.

This federal income tax case is before the court on defendant's motion to dismiss in part and defendant's motion for entry of judgment in favor of plaintiffs in the amount of $68,208. The question is whether by virtue of a closing agreement executed by the parties in 1993, which provided for carryovers of capital losses from tax year 1982 to tax year 1983, an otherwise untimely claim for refund for tax year 1987 based on the carryovers of these capital losses was not barred by the statute of limitations. After careful consideration of the record, and after hearing oral argument, this court finds that plaintiffs' claim for refund for tax year 1987 based on the capital loss carryovers is barred by the statute of limitations. Accordingly, defendant's motion to dismiss in part for lack of subject matter jurisdiction is granted. This court also grants defendant's motion for entry of judgment in favor of plaintiffs on an unrelated issue for tax year 1987 in the amount of $68,208.

## FACTS

Plaintiffs timely filed their U.S. Individual Income Tax Return (Form 1040) for the taxable year ending December 31, 1987 as of the extended due date of October 15, 1988. Plaintiffs deducted $9100 of investment interest expense on this return. The investment interest deduction was the sum of $6679 in investment interest paid or accrued in 1987 and a carryover of 1986 investment interest of $2421. The $2421 was the amount of plaintiffs' taxable income for 1986. Although plaintiffs had more than $2421 of investment

interest from prior tax years that could not be deducted in those prior years, the IRS limited the carryover of investment interest to the amount of taxable income in the year the interest was paid or accrued.

Citing a "U.S. Court of Appeals, Fourth Circuit decision ... *Beyer,*" plaintiffs timely filed a claim for refund for the taxable year 1987 on July 29, 1991. Plaintiffs claimed that they were entitled to additional carryovers of investment interest disallowed in previous taxable years of $179,457, for a total investment interest deduction of $188,557 for taxable year 1987, and sought a refund in the amount of $68,228.

By letter dated November 8, 1991, the IRS disallowed this claim, because "the Appeals Court decision in *Beyer* is contrary to the specific language of the Internal Revenue Code and Revenue Ruling 86–70."

The issue raised in the July 29, 1991 claim for refund was subsequently resolved in the taxpayers' favor by the Federal Circuit. *Sharp v. United States,* 14 F.3d 583 (Fed.Cir. 1993). The parties now agree that plaintiffs are entitled to an investment interest deduction of $188,557 for tax year 1987 and that plaintiffs are entitled to a refund for tax year 1987 in the amount of $68,208 (twenty dollars less than the July 1991 refund claim).

Plaintiffs claim additional refunds for tax year 1987 based upon a Closing Agreement on Final Determination Covering Specific Matters (Form 906) executed by the IRS on January 14, 1993 as a result of an audit of plaintiffs' 1980, 1981, and 1982 tax returns. Plaintiffs had signed the Closing Agreement in October 1992. The Closing Agreement was negotiated after the United States Tax Court, in two test cases, upheld the IRS's determination to disallow the deductions and credits passing through to investors in two tax shelter partnerships for which the plaintiffs claimed deductions and credits for tax years 1980, 1981, and 1982.

The Closing Agreement provided that:

WHEREAS,

(1) Taxpayers invested in F.G. Hunter and F.T.I. transactions in the taxable years 1980, 1981 and 1982.

(2) The parties dispute the allowability of certain deductions and credits claimed by the taxpayers.

(3) The parties wish to resolve with finality the income tax consequences of the taxpayers' investment in F.G. Hunter and F.T.I.

NOW IT IS HEREBY DETERMINED AND AGREED for Federal income tax purposes that:

(1) All losses and related expenses are disallowed in full.

(5) There is disallowed investment interest expense of $129,091 that is available for carryover from the 1982 tax year to the 1983 tax year.

(6) There is a short-term capital loss carryover of $113,495 from the 1982 tax year to the 1983 tax year.

(7) There is a long-term capital loss carryover of $129,044 from the 1982 tax year to the 1983 tax year.

Defendant's motion to dismiss at 111.

The Closing Agreement form also provided that the "agreement is final and conclusive" except that the matter may be reopened in the event of fraud, and that the agreement "is subject to Internal Revenue Code sections that expressly provide that effect be given to their provisions."

The Internal Revenue Service Appeals Officer responsible for processing the Closing Agreement, Steve Millang, stated that items (5), (6), and (7) of the Closing Agreement had no relation to the F.G. Hunter and F.T.I. investments:

3. [in November 1991, at the beginning of the process of attempting to settle the Tax Court case] I had no knowledge of the Lasts' tax situation other than how it related to the issues in the Lasts' Tax Court case, and only for the years 1980, 1981, and 1982. I had no knowledge that the Lasts believed that they were entitled to any capital loss carryover or any investment interest carryover. I had no knowledge of any aspect of the Lasts' taxable year 1987.

4. Sometime after November 6, 1991, the Lasts approached the Internal Revenue Service with a request that the settlement agreement include a provision that the Lasts were entitled to capital loss and investment interest carryovers related to matters which were wholly unrelated to the issues in the Lasts' Tax Court case.

5. I forwarded the Lasts' request to other individuals within the Internal Revenue Service, who, after reviewing the Lasts' request, agreed that the closing agreement could include the provisions that the Lasts requested.

Declaration of Steve Millang. Defendant's motion to dismiss at 142–43. The parties represented at oral argument, however, that it was Millang who calculated the carryovers in items (5), (6), and (7).

In December 1992, plaintiffs filed amended returns for tax year 1987, including a claim for refund. The amended 1987 return purported to incorporate "changes made pursuant to closing agreement," and claimed a refund for tax year 1987 of $125,398. According to this amended return, the total amount of investment interest plaintiffs were entitled to deduct in 1987 was $186,083. Investment interest of $188,857 was claimed on the July 1991 amended return for tax year 1987. Plaintiffs also claimed a reduction in income of $261,930. This refund claim was rejected by the IRS because the Form 906, submitted with the refund claim, was not signed by both parties.

On July 15, 1993, after the IRS executed the Closing Agreement, plaintiffs filed additional amended returns for tax year 1987. The tax year 1987 amended return filed in July 1993 amended the tax year 1987 amended return filed in December 1992 to show a further reduction in income of $83,459. The $83,459 income reduction reflected "the correct capital loss carryforward" and claimed an additional refund of $17,526.[1] The total refund claimed on the December 1992 and

July 1993 amended returns was, therefore, $142,924.

On November 4, 1993, plaintiffs filed their original complaint in this case. Plaintiffs sought judgment in the amount of $68,228, based on the July 1991 amended return, and stated that they would amend their complaint when the IRS had disallowed plaintiffs' December 1992 and July 1993 claims for refund. On September 21, 1994, the Internal Revenue Service disallowed the December 1992 and July 1993 claims for refund because those amended returns were not timely filed.

On January 4, 1995, plaintiffs filed a First Amended Complaint. Plaintiffs claimed $142,924, which plaintiffs maintain includes the $68,228 sought in the original complaint, plus interest. Defendant moved for entry of judgment in favor of plaintiffs for $68,208 on November 1, 1995, in accordance with *Sharp*. Defendant maintains, however, that plaintiffs cannot recover the remaining $74,716 they claim because plaintiffs did not timely file a claim for refund with respect to that claim and because the First Amended Complaint is at variance with the 1991 claim for refund, which defendant claims is the only timely filed claim for refund for tax year 1987.

## DISCUSSION

The United States Court of Federal Claims, concurrently with the United States District Courts, has jurisdiction over tax refund suits. 28 U.S.C. §§ 1346(a)(1) and 1491. In order to meet the jurisdictional requirements for a tax refund suit, however, plaintiffs must file a timely claim for refund with the Internal Revenue Service (IRS). 26 U.S.C. §§ 7422(a) and 6511(a).

Section 6511(a) of the Internal Revenue Code (IRC) provides that, generally, a claim for refund of an overpayment of tax must be filed within three years from the due date of the tax return or two years from the date the tax was paid, whichever is later. Section 6511(a), accordingly, barred any tax refund claim for plaintiffs' 1987 tax year filed after October 15, 1991.

---

1. The total amount of reduction in income claimed by plaintiffs of $345,389—$261,930 plus $83,459—differs from the total amount of short- and long-term carryovers under the Closing Agreement of $242,539—$113,495 plus $129,-044. At oral argument, neither plaintiffs nor defendant could explain the discrepancy.

However, under Section 6511(c), a taxpayer may file a claim for refund after this period where the taxpayer and the IRS have extended the period for assessment of the tax by agreement, so long as the claim is within the period of limitations for assessing the tax for that period. Section 6511 states in pertinent part:

Sec. 6511. LIMITATIONS ON CREDIT OR REFUND.

(a) *Period of Limitation on Filing Claim.*—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later. . . .

(b) *Limitation on allowance of credits and refunds.*—

.　　.　　.　　.　　.

(2) *Limit on amount of credit or refund.*—

.　　.　　.　　.　　.

(B) *Limit where claim not filed within 3-year period.*—If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.

.　　.　　.　　.　　.

(c) *Special rules applicable in case of extension of time by agreement.*—If an agreement under the provisions of section 6501(c)(4) extending the period for assessment of a tax imposed by this title is made within the period prescribed in subsection (a) for the filing of a claim for credit or refund—

(1) *Time for filing claim.*—The period for filing claim for credit or refund or for making credit or refund if no claim is filed, provided in subsections (a) and (b)(1), shall not expire prior to 6 months after the expiration of the period within which an assessment may be made pursuant to the agreement or any extension thereof under section 6501(c)(4). . . .

Section 6501(c)(4) provides:

§ 6501. *Limitations on assessment and collection* [general rule—tax must be assessed within 3 years after return is filed].

.　　.　　.　　.　　.

(c) *Exceptions.*—

.　　.　　.　　.　　.

(4) *Extension by agreement.*—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, . . . both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

■ Statutes of limitation are strictly construed by the courts. "Such periods are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary." *Kavanagh v. Noble*, 332 U.S. 535, 539, 68 S.Ct. 235, 237, 92 L.Ed. 150 (1947). Further,

It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence, a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy.

*Rothensies v. Electric Battery Co.*, 329 U.S. 296, 301, 67 S.Ct. 271, 273, 91 L.Ed. 296 (1946).

Closing agreements are authorized by Section 7121:

§ 7121. *Closing Agreements.*

(a) *Authorization.*—The Secretary is authorized to enter into an agreement in

writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period.

(b) *Finality.*—If such agreement is approved by the Secretary ... such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

(1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and

(2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

Section 1212 generally provides for the carryforward of capital losses to succeeding taxable years indefinitely:

§ 1212. *Capital loss carrybacks and carryovers*

. . . . .

(b) *Other taxpayers.*—

(1) *In general.*—If a taxpayer other than a corporation has a net capital loss for any taxable year—

(A) the excess of the net short-term capital loss over the net long-term capital gain for such year shall be a short-term capital loss in the succeeding taxable year, and

(B) the excess of the net long-term capital loss over the net short-term capital gain for such year shall be a long-term capital loss in the succeeding taxable year.

Plaintiffs admit that the December 1992 and July 1993 claims for refund for tax year 1987 were not filed within the periods prescribed by Section 6511 and that no written waiver of the statute of limitations was executed by the parties. Plaintiffs claim, however, that Section 6511 does not apply to this case because of exceptions to its general rule.

*I. Implied Waiver of the Statute of Limitations*

■ Plaintiffs maintain that the statutory period under Section 6511 was waived by the parties by an implied-in-fact waiver, although, according to plaintiffs, no formal waiver of statute of limitation forms were signed other than for years 1980, 1981, and 1982. Plaintiffs make reference to the theory of implied-in-fact contracts, but as there is little doubt that the Closing Agreement is a contract, plaintiffs appear to be arguing that the Closing Agreement contained an implied term waiving the statute of limitations.

Plaintiffs point out that at the time the IRS notified the taxpayer that it had executed the Closing Agreement on June 30, 1993, the statute of limitations on filing claims for refund had already run for tax years 1983 through 1989. Plaintiffs claim that defendant concedes that the Closing Agreement expressly waives the statute of limitations on filing a claim for refund for the 1983 tax year, but defendant disputes that claim. Plaintiffs further claim that it is unreasonable to contend that the parties would sign an agreement that provides for carryovers that cannot be used.

Revenue Procedure 68–16 "explain[s] procedures applicable to the processing of closing agreements by the Internal Revenue Service." *Rev.Proc. 68–16*, Sec. 1. The agreement should "specify the years involved." *Id.* Sec. 7.04. "The direct or indirect impact of the determination of a specific matter upon other years ... should be given careful consideration." *Id.* Sec. 7.05.

■ "The closing agreement is a contract, and its interpretation is a matter of law to be resolved by the court. An interpretation that gives a reasonable meaning to all parts of a contract will be preferred to one that leaves portions of the contract meaningless." *Temple v. United States*, 11 Cl.Ct. 302, 305 (1986).

The Sixth Circuit has found that:

A closing agreement is a contract, and generally is interpreted under ordinary contract principles. Thus, if the essential terms of an agreement are deemed unambiguous, a court will not look beyond the

four corners of the document to determine the parties' intent. An interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless.

*Rink v. Commissioner,* 47 F.3d 168, 171 (1995).

Similarly, the Fifth Circuit has stated that "[a] closing agreement is interpreted under ordinary principles of contract law." *Smith v. United States,* 850 F.2d 242, 245 (5th Cir.1988). In *Smith,* the closing agreement invalidated certain of the taxpayers' deductions during two tax years. The taxpayers argued that because the agreement did not address penalties and interest, the agreement was ambiguous and must be read in light of extrinsic evidence. The Fifth Circuit rejected that argument, finding that, "[t]he limited scope of the closing agreement does not make it ambiguous, however, because the calculation of taxable income and the assessment of penalties and interest are provided for by law." *Smith,* 850 F.2d at 245. The *Smith* court noted that "the applicable Revenue Procedure does not require explicit agreement on the taxpayer's interest liability '[u]nless there is some issue with respect to [it]'. Rev.Proc. 68–16, 1968–1 C.B. 770." *Id.* at 245 n. 6.

■ The closing agreement at issue in this case is not ambiguous simply because it makes no reference to the statute of limitations. This court therefore declines to look beyond the four corners of the agreement for an implied term waiving the statute of limitations. Items (5), (6), and (7) of the agreement are not necessarily meaningless unless the statute of limitations is waived because capital loss carryovers can be carried forward indefinitely. The capital loss carryover, therefore, can theoretically be carried forward into years for which the statute of limitations on claims for refund has not run and because, as acknowledged by defendant at oral argument, the Closing Agreement does impliedly waive the statute of limitations for tax year 1983.

■ Further, it was plaintiffs who requested that these terms be included in the agreement, and plaintiffs cannot now claim that the inclusion of these terms rendered the agreement ambiguous and amenable to an interpretation which requires the inclusion of an implied waiver of the statute of limitations. Plaintiffs could have negotiated for the inclusion of express language in the agreement waiving the statute for tax year 1987 as the Internal Revenue Code provides for written waivers of the statute of limitations. As the parties do not dispute the plain meaning of the terms of the agreement, there is no need to look beyond the four corners of the agreement for an intended waiver of the statute of limitations.

## II. The Mitigation Provisions of IRC 1311–14

■ Plaintiffs argue in the alternative that, even if the carryover into tax year 1987 is barred by the statute of limitations, plaintiffs are entitled to relief under the mitigation provisions of IRC §§ 1311–14. Although a closing agreement constitutes a determination as defined by § 1313, plaintiffs have provided no legal analysis or evidence to support the applicability of these mitigation provisions.

In certain circumstances, the mitigation provisions of §§ 1311–14 provide "certain rules for the correction of the effect of an erroneous treatment of an item in a taxable year which is closed by the statute of limitations or otherwise." Treas.Reg. § 1.1311(a)(1). For example, "if the taxpayer claims that a deduction should be allowed for a particular year and it is ultimately determined that the deduction was not allowable in that year, then the taxpayer may take the deduction in the proper year if that year was not closed at the time the taxpayer first claimed a deduction." Treas.Reg. § 1.1311(c).

■ A taxpayer invoking the mitigation provisions bears the burden of proving that the specific requirements of the provisions are met. *Longiotti v. United States,* 819 F.2d 65, 68 (4th Cir.), *cert. denied,* 484 U.S. 985, 108 S.Ct. 502, 98 L.Ed.2d 500 (1987). Plaintiffs must meet three requirements for the mitigation provisions to apply:

(1) there must be "a determination" as defined by 26 U.S.C. § 1313(a)(1)–(4);

(2) the determination must fall within one of the "circumstances of adjustment" described in 26 U.S.C. § 1312(1)–(7); and

(3) depending on which circumstance of adjustment is found, either an inconsistent position must have been maintained by the party against whom the mitigation will operate, 26 U.S.C. § 1311(b)(1), or the correction of the error must not have been barred at the time the party for whom mitigation will operate first maintained its position, 26 U.S.C. § 1311(b)(2).

*Longiotti,* 819 F.2d at 68. While a closing agreement can be "a determination," plaintiffs do not meet the last two requirements.

Plaintiffs have failed to satisfy the second requirement of the mitigation provisions that the determination fall within one of the specific *circumstances of adjustment described* in § 1312(1)–(7). Plaintiffs contend that the circumstance of adjustment applicable to this case is § 1312(4), which allows mitigation in the case of a double disallowance of a deduction or credit. This situation "applies if the determination disallows a deduction or credit which should have been, but was not, allowed to the same taxpayer for another taxable year." Treas.Reg. § 1.1312–4(a). However, plaintiffs have provided no evidence that shows that the capital loss deductions were in fact disallowed during the years 1980–1982.

There can, in fact, be no double disallowance in this case. The Closing Agreement at most authorized an allowance rather than a disallowance of the capital loss carryforwards. While the main thrust of the Closing Agreement was that tax shelter partnership losses and expenses were disallowed in full, the capital loss deductions were wholly unrelated to the partnership losses and expenses. In addition, it was plaintiffs who affirmatively requested that the loss carryforward and investment interest deductions be included in the Closing Agreement. Favorable provisions added to the Closing Agreement at plaintiffs' request that allow plaintiffs loss carryforwards cannot result in a double disallowance of a deduction under § 1312(4).

■ As defendant has not maintained an inconsistent position here, § 1311(b)(2)(B) requires that correction of the error must not have been barred at the time the plaintiffs first maintained their position in writing. Plaintiffs have failed to establish that they first maintained in writing that they were entitled to the capital loss carryforwards before the statute of limitations expired for the 1987 tax year.

On November 6, 1991, the IRS Appeals Officer responsible for the plaintiffs' Tax Court case for the years 1980–1982 was not aware that plaintiffs believed that they were entitled to any capital loss carryover, nor that plaintiffs requested sometime after that date that the capital loss deductions be included in the Closing Agreement. Based on this evidence, it appears that plaintiffs did not assert the capital loss carryovers until sometime after November 6, 1991. Plaintiffs were barred from asserting their claim after October 15, 1991.

### III. Equitable Recoupment

■ Plaintiffs also claim that they are entitled to prevail under the doctrine of equitable recoupment. Plaintiffs' reliance on this doctrine is, however, misplaced.

■ The doctrine of equitable recoupment, like the mitigation provisions contained in IRC §§ 1311–14, relieves the harsh consequences resulting from the application of the statute of limitations. *Kolom v. United States,* 791 F.2d 762, 766 (9th Cir.1986). The purpose of the doctrine of equitable recoupment is to prevent unjust enrichment by either the taxpayer or the government, and it may be invoked by the taxpayer to recover a twice paid tax or it may be invoked by the government to prohibit tax avoidance. *Id.* at 766–67. The doctrine of equitable recoupment operates to allow a taxpayer, in certain specified cases, to recoup or offset any previously overpaid taxes against his current taxes notwithstanding the fact that the statute of limitations for filing a refund on the previous taxes has run. *Scott v. United States,* 795 F.Supp. 1028, 1032 (D.Haw.1992).

As the Ninth Circuit has explained:

[I]t offends the sense of fairness to permit the sovereign to collect two taxes arising

from a single transaction, one based on the taxpayer's view and the other on that of the sovereign. This ordinarily does not occur when neither party is barred by limitations from a proper adjustment. Only when the taxpayer is barred by limitations from correcting his erroneous treatment does some relief appear to be necessary. One commentator has suggested that the essence of the doctrine of recoupment is that it "allows a party to use a tax related claim, barred by the statute of limitations, as a defense to another party's timely tax related claim, where the two claims arise out of the same transaction or taxable event."

*Harrah v. United States,* 69 F.3d 1448, 1451 (9th Cir.1995) (*quoting* James E. Tierney, *Equitable Recoupment Revisited: The Scope of the Doctrine in Federal Tax Cases after United States v. Dalm,* 80 Ky.L.J. 95, 102 (1991–92)).

 In order for the doctrine of equitable recoupment to be applicable, the following three criteria must be met: 1) the taxable event claimed upon and the one considered in recoupment must arise out of a single transaction; 2) the single transaction must be subjected to two taxes based upon inconsistent legal theories; and 3) the amount claimed in recoupment must be barred by the statute of limitations while the asserted deficiency by the government must be timely. *Kolom,* 791 F.2d at 767. The doctrine, in other words, requires some validly asserted deficiency against which the asserting party desires to recoup a time-barred refund. *O'Brien v. United States,* 766 F.2d 1038, 1049 (7th Cir.1985).

The scope of equitable recoupment's relief, however, is narrow: "the teaching of [the Supreme Court in] *Rothensies* is that it [equitable recoupment] is not a flexible doctrine, but a doctrine strictly limited, and limited for good reason." *Ford v. United States,* 276 F.2d 17, 149 Ct.Cl. 558, 569 (1960) (citing *Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946)). The Supreme Court in *Rothensies* restricted equitable recoupment to the situation in which both parties' claims originate in the same transaction because otherwise "we

would seriously undermine the statute of limitations in tax matters ... Every assessment of deficiency and each claim for refund would invite a search of the taxpayer's entire history for items to recoup." *Rothensies,* 329 U.S. at 302, 67 S.Ct. at 274. Similarly, the Court of Claims has denied equitable recoupment because the time-barred estate tax deficiencies and the income tax refunds due the plaintiffs did not arise out of the same transaction. *Wilmington Trust Co. v. United States,* 610 F.2d 703, 221 Ct.Cl. 686, 705 (1979).

Further, the Supreme Court has held that a claim of equitable recoupment does not rise to an independent cause of action. *United States v. Dalm,* 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). In *Dalm,* the Court found that its earlier opinions allowing equitable recoupment "stand only for the proposition that a party litigating a tax claim in a timely proceeding may, in that proceeding, seek recoupment of a related, and inconsistent, but now time-barred tax claim relating to the same transaction.... To date, we have not allowed equitable recoupment to be the sole basis for jurisdiction." *Dalm,* 494 U.S. at 608, 110 S.Ct. at 1368.

In this case, as in *Dalm,* plaintiffs seek to invoke equitable recoupment as an independent cause of action. Plaintiffs' independent cause of action is time-barred by IRC § 6511(a), and equitable recoupment cannot provide a jurisdictional basis for plaintiffs' refund action.

Moreover, this is not a case where any sort of equitable relief would be appropriate. Plaintiffs can hardly claim they were treated unfairly when they themselves requested that the capital loss and investment interest deductions be included in the Closing Agreement, when the year 1987 was not mentioned in the Closing Agreement, and when they knew that the statute of limitations had already run on tax year 1987.

*IV. Equitable Estoppel*

 Plaintiffs contend that the government should be equitably estopped from invoking the statute of limitations. However, plaintiffs failed to identify, much less to establish, the elements of such a theory.

**10**

To prevail against the government on a theory of equitable estoppel in a tax case, plaintiffs must prove:

(1) a misrepresentation by an agent of the United States acting within the apparent scope of his duties;

(2) the absence of contrary knowledge by the taxpayer in circumstances where he may reasonably act in reliance;

(3) actual reliance;

(4) detriment; and

(5) a factual context in which the absence of equitable relief would be unconscionable.

*Rocovich v. United States,* 18 Cl.Ct. 418, 424 (1989). Courts have consistently applied the doctrine of equitable estoppel against the government with the utmost caution and restraint. *Estate of Akin v. United States,* 31 Fed.Cl. 89, 96 (1994).

Plaintiffs have asserted no evidence that the government's action or inaction constituted an affirmative misrepresentation. The Closing Agreement clearly states that the carryovers could be taken "from the 1982 tax year to the 1983 tax year" and makes no reference to the 1987 tax year. Thus, plaintiffs are not entitled to invoke equitable estoppel.

## CONCLUSION

For the foregoing reasons, this court finds that plaintiffs' claims for refund for tax year 1987, filed in December 1992 and July 1993, are barred by the statute of limitations. Accordingly, this court grants defendant's motion to dismiss in part for lack of subject matter jurisdiction. This court also grants defendant's motion for entry of judgment in favor of plaintiffs for $68,208, based on the July 29, 1991 claim for refund for the year 1987, plus interest as allowed by law.