**In re Richard J. GRASSGREEN, Debtor.**

**Bankruptcy No. 93–640–BKC–3P1.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Sept. 26, 1994.

David E. Otero, Jacksonville, FL, for debtor.

Bruce Russell, Washington, DC, for U.S.

J. Marbury Rainer, Atlanta, GA, for Enstar.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon objections by debtor and Enstar to claims 7 and 28 filed by the United States of America Internal Revenue Service ("IRS"). The Court held a hearing on May 19, 1994, and upon the evidence presented enters these findings of fact and conclusions of law:

#### Findings of Fact

From 1969 through October, 1990, debtor was an officer and director of Enstar Group, Inc., and its predecessor corporations including Kinder–Care Learning Centers, Inc. Debtor received a law degree from the University of Iowa and was employed by the IRS as a trial attorney prior to his affiliation with Kinder–Care.

From 1984 until April, 1987, debtor was responsible for the day-to-day management of Enstar's investment portfolio. During that period, Enstar invested in high-yield corporate debt securities or "junk bonds" and preferred stock issues. As the officer responsible for Enstar's investment portfolio, debtor made commitments through Drexel Burnham Lambert, Inc., to purchase securities to fund takeover bids by companies unrelated to Enstar. Drexel Burnham Lambert paid a fee equal to a percentage of the funds committed.

In 1984, debtor and Perry Mendal, president and CEO of Kinder–Care, entered into a partnership for personal investments. The partnership, Megra partners, had two bank accounts, one with Drexel Burnham Lambert in California and one with Central Bank in Alabama. The Drexel Burnham Lambert account used Kinder Care's taxpayer identification number and was held in the name Megra. Debtor does not know which taxpayer identification number was used for the Central Bank account. Debtor received monthly statements for these two accounts.

Megra purchased six million dollars of Coastal Corporation debt security and Ens-

tar purchased four million dollars to fund Coastal Corporation's takeover bid for American Natural Resources. Megra secured the loan received from Central Bank to fund its purchase with a six million dollar Coastal Corporation bond. The bond was held by Central Bank. The partnership retained the entire commitment fee from the Coastal Corporation financing. In addition to the commitment fee from the Coastal Corporation transaction, the partnership retained other commitment fees due Enstar.

Debtor had a CPA from the tax department at Enstar prepare his tax returns for 1985, 1986 and 1987, although no one signed the returns in the space provided for a preparer. Debtor testified that he turned all tax records over to the CPA and did not analyze the information himself. Debtor included the income received from the many other partnerships in which he had an interest on his returns for the years at issue.

Debtor received forms 1099 from Drexel Burnham Lambert for the interest accrued on the commitment fees but not for the principal amount of the fees. The interest reflected on the 1099s was included in the income debtor reported on his tax returns. Debtor testified that the reason the fees were not included in his income was because the principal amount of the fees were not included in the 1099s he received. Debtor did not receive a 1099 for the interest received on the six million dollar Coastal Corporation bond for 1986 or 1987. Debtor did not take a deduction for interest expense on the loan to finance the Coastal Corporation commitment.

Debtor entered into a cooperation and plea agreement with the United States Attorney for the Southern District of New York in which debtor pled guilty to two counts of securities fraud based upon the retention of Kinder–Care's commitment fees. Debtor advised the United States Attorney that the commitment fees had not been included in his 1985 income tax return. The cooperation agreement required debtor to file amended tax returns for 1985, 1986 and 1987. The agreement states in part:

It is further understood that prior to the date of sentencing Richard Grassgreen shall file accurate amended tax returns for the years 1985–90, and will pay, or will enter into an agreement to pay, past taxes due and owing by him to the Internal Revenue Service, including applicable penalties, if any on such terms and conditions as will be agreed upon between Richard Grassgreen and the Internal Revenue Service.

Based upon the amended returns, debtor owed an additional tax of $170,007.00 for 1985, an additional tax of $99,565.00 for 1986, and an additional tax of $78,851.00 for 1987. Debtor paid $90,008.00 on the 1985 liability claiming an offset of $79,999.00 for a refund due. Debtor paid $61,622.00 on the 1986 liability claiming an offset of a $37,943.00 refund and paid $78,851.00 on the 1987 liability. Debtor has not paid interest or penalties for any of these years.

The IRS audited debtor's 1985 return in 1986 and assessed additional tax on June 27, 1988. Debtor paid the additional tax in the amount of $5,176.00 and interest of $1,315.24 and the filed was closed. After receiving information from the United States Attorney for the Southern District of New York, the IRS reopened the investigation of the 1985 tax return.

The IRS filed claim 7 on August 30, 1990, in the amount of $670,637.82. On October 7, 1993, the IRS filed an amended claim, claim 28 in the amount of $512,152.82. The claim is as follows:

| Tax Year | Assessment | Tax Due | Interest |
|----------|-----------|---------|----------|
| 12–31–85 | 12–23–91 | 0 | 142,475.31 |
| 12–31–86 | 1–27–92 | 47,613.00 | 80,290.03 |
| 12–31–87 | 1–27–92 | 0 | 38,271.48 |

Penalty: 196,280.00

Testimony at the hearing indicates that $4,761.00 of the penalty figure is penalty for failure to pay tax for 1986 and $47.88 is penalty for failure to pay in 1987. The remainder of the penalty included in the claim is attributable to fraud and understatement penalties from the 1985 return. The IRS sent debtor a notice of deficiency on July 28, 1993, which informed debtor of this 1985 penalty for fraud pursuant to 26 U.S.C.

§ 6653(b) and substantial understatement pursuant to 26 U.S.C. § 6111.

The interest included in claim 28 for 1985 was manually assessed on December 23, 1991, and was manually assessed on January 27, 1992, for 1986 and 1987. The $47,613.00 amount is a refund originally claimed by debtor which was disallowed by the IRS. The claim is secured by a 1992 refund due debtor to the extent of $7,223.00. The remainder of the claim is unsecured.

### Conclusions of Law

The Court deals with two preliminary matters before addressing debtor's objection to claim. First, the IRS concedes that claim 7 is superseded by claim 28 and should be disallowed. Second, the IRS argues that Enstar is without standing to object to its claim.

■ This Court held in *In re Charter Co.*, 68 B.R. 225 (Bankr.M.D.Fla.1986) that when a trustee is appointed a creditor must receive authority from the court to assert an objection to claim, but when the debtor is acting as debtor in possession, a creditor, as a party in interest, has standing to object to claims without the necessity of Court approval.

Debtor acts as debtor-in-possession in this case, and Enstar is a party in interest with standing to object to claims.[1]

Debtor argues that there are two independent reasons for the Court to sustain its objection to claim 28. First, he suggests that he had an agreement with the IRS to pay the principal amount of tax due on his amended returns without interest or penalty and that all amounts have been paid except a disallowed refund in the amount of $47,613.00. In the alternative, debtor states that the statute of limitation bars claim 28.

■ Pursuant to 11 U.S.C. § 502(a), upon objection, the Court shall determine the amount of a claim. A claim is prima facie valid and constitutes prima facie evidence as to validity and amount. *In re Saint Augustine Gun Works*, 75 B.R. 495, 499 (Bankr.

M.D.Fla.1987); F.R.B.P. 3001(f). However, once the objecting party has rebutted the prima facie validity of the claim the claimant bears the ultimate burden of proof. *Id.* The Court has the authority to determine the amount of any tax liability. 11 U.S.C. § 505. The Court will address debtor's arguments in order.

### Agreement

The cooperation agreement between debtor and the United States Attorney for the Southern District of New York provided for debtor's filing amended tax returns and negotiating an agreement with the IRS as to payment of any tax and penalties due. Debtor argues that he had an agreement with the IRS to pay principal only in satisfaction of tax liability from 1985, 1986 and 1987. Debtor testified that the letter from his attorney outlining their position as to the amount of tax due on the amended returns, Revenue Agent Flowers' acceptance of payment for these amounts, a letter from his attorney to Revenue Agent Hutto explaining their position and a memorandum from Agent Flowers to Agent Hutto establishes the agreement between debtor and the IRS.

For each of the years in issue, 1985, 1986 and 1987, the October 23, 1991, letter from debtor's attorney to Agent Flowers states:

Taxpayers have not included penalties since at this time no penalties have been asserted. Taxpayers have included no interest since without a showing of civil fraud the statute of limitations applicable to (tax year) would be closed and no income tax, interest or penalties would be due.

The letter from debtor's attorney to Agent Hutto states that no interest was included in the payment of tax because "I have been unable to locate a basis under which the interest can be assessed since the statute of limitations had expired before the voluntary payment of tax. I have found nothing that indicates that a statute of limitations that has expired can be reopened by agreement." Debtor personally provided Agent Flowers

---

1. Enstar participated in the hearing held May 19, 1994, but limited its post-hearing memorandum to the issue of standing. In all other respects, the Court understands that Enstar adopts debtor's position.

with the letter outlining his understanding of his liability, the amended returns and payment.

Debtor also relies on a memorandum dated September 1, 1992, from Agent Flowers to Agent Hutto and the sentencing memorandum from the United States Attorney for the Southern District of New York as evidence of his agreement with the IRS. The sentencing memorandum states in part that debtor "has diligently and responsibly fulfilled his obligation under the agreement. He has amended his tax returns and paid all taxes due and owing for 1985 through 1989. He has returned the commitment fees to the company." The September 1, 1992, memorandum states in full:

> Per our conversation, I have contacted the Memphis Service Center to have them straighten out the problem we discussed on the above named taxpayer. The interest should be abated once the problem is taken care of.
>
> You may wish to contact Mark Dorfman at MSC Stop 45 to verify that everything is taken care of.

Debtor testified that after giving Agent Flowers his amended returns he began receiving notices for interest due on 1985, 1986 and 1987 taxes. Debtor spoke with Agent Flowers and the notices stopped. Debtor attributes the stopping of the notices to the September 1, 1992, memorandum. Agent Flowers testified that the memorandum was sent to insure no refund was issued because there was a question whether interest was due and a possible statute of limitations problem.

■ Based on the letters, memoranda and testimony the Court cannot find that there was an agreement between the IRS and debtor as to payment of taxes, interest and penalties for the years 1985 through 1990. First, the memorandum sent to Agent Hutto by Agent Flowers is ambiguous and the evidence conflicts as its meaning. Second, the letters from debtor's attorney merely outline debtor's position as to the amount of tax due but there is no evidence that the IRS agreed to this position. In fact, Agent Flowers testified that he did not advise debtor that he would not be liable for other amounts for these tax years. Nor does acceptance of payment by Agent Flowers indicate an agreement with regard to any other amount that may be due. The IRS is authorized to issue a notice of deficiency after receiving a return and payment of tax shown pursuant to the return. 26 U.S.C. § 6213(a); 26 U.S.C. 6211. Thus acceptance of a return and payment does not necessarily indicate agreement with the amount paid or that the payment is in full satisfaction of liability.

Finally, there is no writing which memorializes the alleged agreement. Three days after the United States Attorney for the Southern District of New York wrote the sentencing memorandum, stating that debtor has paid all amounts due, the IRS manually assessed interest for 1985. This assessment reinforces the conclusion that there was not an agreement as to interest and penalties. The cooperation agreement states that debtor and the IRS should reach an agreement as to payment of any taxes and penalties that may be due upon filing amended returns; it does not indicate that the IRS and debtor have reached an agreement. The other evidence produced by debtor also fails to establish such agreement with the IRS.

■ Moreover, to prevail on the grounds of equitable estoppel, debtor must at least show that the traditional elements of estoppel are present. *Bokum v. Commissioner,* 992 F.2d 1136 (11th Cir.1993). The traditional elements of equitable estoppel are: 1) words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of thing; 2) wilfulness or negligence with regard to the acts, conduct or acquiescence; and 3) detrimental reliance by the other party upon the state of things so indicated. *Id.* at 1141.

■ The Court has found that debtor has failed to show that any words, acts or conduct in this case are sufficient to cause another to believe there is an agreement. Thus the first element is not present. For all these reasons the Court finds that debtor and the IRS did not have an agreement as to the amount of tax debtor would be required to pay upon filing amended returns for tax years 1985 to 1990.

*Statute of Limitations*

 Debtor argues that even if the Court concludes, as it has, that there is no agreement between debtor and the IRS, claim 28 is barred by the statute of limitations contained in 26 U.S.C. § 6501(a). Section 6501(a) states in relevant part:

(a) General Rule. Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) ... and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

The three year limitation period runs from the date the original return is filed. *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934); *Northern Anthracite Coal Co. v. Commissioner*, 21 B.T.A. 1116 (1931). Thus, absent a showing that an exception to the three-year period applies, the IRS would have to had assessed deficiencies on or before April 15, 1989, for 1985; by April 15, 1990, for 1986; and by April 15, 1991, for 1987.

Assessments were made on December 23, 1991, for 1985, and on January 27, 1992, for 1986 and 1987. Unless an exception applies, claim 28 is barred.

*Civil Fraud Penalty*

 Subsection (c) of § 6501 contains exceptions to the three year limitation period. Section 6501(c)(1) states in relevant part:

In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

The government has the burden of establishing, by a preponderance of the evidence, an exception to the three-year statute of limitations. *Grant v. Commissioner*, 67 T.C.Memo 1994–161, 1994 WL 135326 (1994); *Burrow v. Commissioner*, T.C.M. (P–H) para. 43,338, 2 T.C.M. 410 (1943).

 To succeed on its position that debtor filed fraudulent returns, the IRS must establish by clear and convincing evidence that the taxpayer had a specific intent to evade tax believed to be owing. *Stonecipher v. Commissioner*, T.C.Memo 1988–41, 1988 WL 7910; *Gajewski v. Commissioner*, 67 T.C. 181, 1976 WL 3591 (1976), *aff'd without op.*, 578 F.2d 1383 (8th Cir.1978). Because direct evidence of fraudulent intent is rarely available, courts have inferred intent from circumstantial evidence. *Bradford v. Commissioner*, 796 F.2d 303 (9th Cir.1986). These "badges of fraud" include: 1) understatement of income; 2) inadequate records; 3) failure to file tax returns; 4) implausible or inconsistent explanations of behavior; 5) concealing assets; 6) failure to cooperate with taxing authorities; 7) engagement in illegal activities. *Id.* Understatement of income alone is not sufficient to establish fraud but is evidence of fraudulent intent. *Id.*; *Merritt v. Commissioner*, 301 F.2d 484 (5th Cir.1962); *Stonecipher v. Commissioner*, T.C.Memo 1988–41. The intelligence and sophistication of the taxpayer are also relevant. *Stoltzfus v. United States*, 398 F.2d 1002 (3rd Cir.1968); *Reinhardt v. Commissioner*, T.C.Memo. 1993–397, 1993 WL 326850.

 In this case only the first and seventh *Bradford* factors clearly support the IRS contention that debtor possessed the specific intent to evade a tax known to be owing: Debtor understated his gross income by at least 25 percent for each of the three years in issue [2] and pled guilty to two counts of securities fraud. In addition, a conviction for violation of 15 U.S.C. § 78j(b) requires a showing of scienter. Thus debtor's plea, the understatement of income and intent to com-

2.

| YEAR | ORIGINAL GROSS INCOME | AMENDED GROSS INCOME | PERCENTAGE INCREASE |
|------|----------------------|----------------------|---------------------|
| 1985 | $603,869. | $1,013.967. | 68% |
| 1986 | $824,671. | $1,287,287. | 56% |
| 1987 | $761,312. | $1,363,805. | 79% |

mit securities fraud provides some evidence of fraudulent intent to evade tax.

Debtor filed all required tax returns. In addition, his explanation that the income understatement occurred because all his income was not included on either his 1099 forms or W–2 statements is credible. Payment for services and commissions is required to be included on forms 1099 and the Court finds debtor's testimony, that these amounts would be included on form 1099, is reasonable. 26 U.S.C. § 6041 *et seq.*

The IRS alleges that debtor failed to cooperate during discovery and failed to turn over bank records which would have provided his tax preparer information needed to include commitment fees and bond income in debtor's income in the first instance. However, the IRS did not present any affirmative evidence to substantiate this allegation. Debtor testified that he turned over all forms 1099 and W–2 statements to the accountant at Kinder–Care who prepared his tax return. Debtor did not give the accountant the bank statements for the Megra accounts. Debtor also testified that he believed he had complied with all discovery requests. These facts do not indicate fraudulent intent for either failure to comply with discovery or to provide a tax preparer with necessary documents.

■ The IRS argues that debtor's use of the of the Kinder–Care tax identification number on the Drexel Burnham Lambert account and holding the account in the name of the partnership and not the individual partners' names indicates an intent to conceal assets. Because the commitment fees belonged in part to Kinder–Care, the logical inference from these facts is that debtor was trying to conceal the funds from Kinder–Care. The Court does not, however, conclude that debtor was attempting to conceal assets in order to evade taxes. Debtor reported interest earned on the commitment fees on his tax returns. This is inconsistent with an intent to conceal assets from the IRS to evade tax on these amounts. Debtor also failed to take a deduction for interest expense on the Coastal bond to which he was entitled. In conjunction with debtor's failure to report the principal amount of the commit-ment fees, this failure to take a deduction indicates negligence in reporting and not intent to evade taxes.

Other factors which indicate that debtor did not possess fraudulent intent are present. Debtor did not conduct substantial business in cash to avoid creating a record of his activities. Debtor is intelligent and well educated, creating the impression that debtor may have been grossly negligent in organizing and reporting his taxes but is not indicative of fraud.

In sum, the Court holds that the IRS has failed to show by clear and convincing evidence that debtor possessed the requisite fraudulent intent to evade taxes when he filed his 1985 return. The factors are even less convincing for 1986 and 1987 because there is no illegal commitment fee activity. Accordingly, the IRS claim that debtor filed fraudulent returns fails and does not provide a basis for an exception to the three-year limitation contained in § 6501(a).

### *Substantial Omission*

■ The IRS next argues that debtor understated his gross income by at least 25 percent for 1985, 1986 and 1987 creating an exception to the three-year limitation period. Section 6501(e) states in relevant part:

(e) Substantial omission of items

(A) General rule

If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed.

The Court has concluded that debtor understated his gross income for 1985, 1986 and 1987, by 25 percent or more. *Supra,* note 2. Thus, the limitation period for assessment and collection is six years. 26 U.S.C. § 6501(e).

In addition to the extension of the limitation period for substantial omission, the IRS argues that pursuant to § 108(c) the running

of the six-year limitation period is suspended by the filing of debtor's bankruptcy and has yet to expire. Section 108(c) states in relevant part:

(c) Except as provided in section 524 of this title, if applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including a suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362 of this title....

Section 6503(i) of title 26 states in relevant part:

(i) Cases under title 11 of the United States Code

The running of the period of limitations provided in section 6501 ... on the making of assessments or collection shall, in a case under title 11 of the Untied States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and

(1) for assessment, 60 days thereafter....

■ Initially, it is clear that § 108(c) suspends the running of the limitation period contained in 26 U.S.C. § 6501 for the time remaining on the limitation period as of the filing date plus 60 days. *Clark v. Commissioner*, 90 T.C. 68, 1988 WL 2749 (1988); *Thompson v. Commissioner*, 84 T.C. 645, 1985 WL 15334 (1985); *In re Harris*, 167 B.R. 680 (Bankr.M.D.Fla.1994) (noting legislative history of § 108(c) refers to application of § 6503(b) in bankruptcy).

■ Like § 108(c), the issuance of a notice of deficiency suspends the running of the limitations period until the IRS is again able to act to assess or collect. 26 U.S.C. § 6503(a). Issuing a notice of deficiency is a prerequisite to assessment or collection of a

deficiency and must be mailed prior to the limitation period expiring. 26 U.S.C. § 6211; *Id.; Bokum v. Commissioner*, 992 F.2d at 1139 (noting that IRS is required to send notice of deficiency "which serves largely as taxpayers' ticket to Tax Court"); *Kinsey v. Commissioner*, 859 F.2d 1361 (9th Cir.1988) (before assessment of a deficiency notice must first issue and where taxpayers agree to an extension notice only need issue prior to expiration of extension). A deficiency is defined as "the difference between the taxpayer's liability and the liability shown on the taxpayer's return." *Benzvi v. Commissioner*, 787 F.2d 1541, 1542 (11th Cir.1986).

■ Applying the six-year limitation in this case, the IRS must have assessed tax for 1985 before April 15, 1992. The IRS sent a statutory notice of deficiency for 1985 on July 28, 1993, but has yet to assess fraud and understatement penalties. Because the limitation period expired prior to debtor's filing bankruptcy, it could not be extended by 108(c), and the IRS claim for penalties for 1985 pursuant to 26 U.S.C. § 6661 and 26 U.S.C. 6653(b) is barred.

■ With regard to 1986 and 1987, debtor argues that because § 362(b)(9) creates an exception from the stay for issuing a notice of deficiency the IRS could have issued notices for 1986 and 1987. Debtor concludes that because the IRS has not issued deficiency notices for penalties for 1986 or 1987, the IRS has waived their right to assert penalties for those years. Because the IRS only need issue the notice of deficiency prior to the expiration of the limitation period and § 108(c) suspends the expiration of this period, the IRS may timely issue a notice of deficiency as long as it does so within the time remaining on the limitation period plus 60 days after the stay is lifted, the case is closed or debtor is discharged. Consequently, the Court concludes that the IRS has not waived its right to assert penalties as to 1986 and 1987.

Absent debtor's bankruptcy, the limitation period would have expired on April 15, 1993, for 1986, and April 15, 1994, for 1987. The limitation period for 1986 and 1987 was ex-

tended by § 108(c) because debtor filed bankruptcy prior to the expiration of the six-year limitation period. Thus the limitation period is extended for the number of days from February 11, 1993, to April 15, 1993, and until April 15, 1994, plus 60. The IRS assessed $47,613.00 on January 27, 1992, within the limitation period. However, no notice of deficiency has been issued. Because the limitation period has not expired, that portion of claim 28 was timely assessed and a timely notice of deficiency may still issue. Consequently, the $47,613.00 portion of claim 28 is allowed.

Likewise, the $47.88 failure to pay penalty for 1987 was assessed on October 21, 1991, within the limitation period and that portion of the claim is allowed.

The IRS has not assessed the 1986 penalty for failure to pay or sent a notice of deficiency for the $4,761.00 penalty. Because 108(c) suspends the running of the limitations period, the IRS could still send a timely notice of deficiency and assess this penalty. Thus this portion of the claim is allowed.

### Interest

Statutory interest on unpaid tax liability is calculated pursuant to 26 U.S.C. § 6601 which states in relevant part:

(a) GENERAL RULE.—If any amount of tax imposed by this title . . . is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid for the period from such last date to the date paid.

(b) LAST DATE PRESCRIBED FOR PAYMENT.—For purposes of this section, the last date prescribed for payment of the tax shall be determined under chapter 62

Chapter 26, § 6151 states in relevant part:

(a) GENERAL RULE.—Except as otherwise provided in this subchapter, when a return of tax is required under this title or regulations, the person required to make such return shall, without assessment or notice and demand . . . pay such tax at the time and place fixed for filing the return (determined without regard to any extension of time for filing the return) . . .

(c) DATE FIXED FOR PAYMENT OF TAX.—In any case in which a tax is required to be paid on or before a certain date, or within a certain period, any reference in this title to the date fixed for payment of such tax shall be deemed a reference to the last day fixed for such payment (determined without regard to any extension of time for paying the tax).

(g) Interest prescribed under this section on any tax may be assessed and collected at any time during the period within which the tax to which such interest relates may be collected.

Thus, statutory interest on the debtor's tax liability began to accrue on the due date for each return, and the IRS has until the end of the six-year limitation period to assess or begin court proceedings to collect the interest accrued. A notice of deficiency is not required prior to collection of interest because the imposition of interest is not subject to the jurisdiction of the tax court. *Standard Oil Co. v. McMahon*, 244 F.2d 11 (2nd Cir.1957). Thus the IRS only need assess the interest within the limitation period.

The IRS manually assessed interest for 1985 on December 23, 1991. Thus the assessment for interest was made prior to the 1985 limitation period running on April 15, 1992, and the interest claims for 1985 are not barred.

The IRS assessed interest for 1986 and 1987 on January 27, 1992, prior to the expiration of the statute of limitation. Consequently, the interest assessment for 1986 and 1987 is timely and debtor is liable for this portion of the claim.

### Conclusion

The IRS failed to prove by clear and convincing evidence that debtor filed fraudulent returns for 1985, 1986 and 1987. Debtor omitted 25 percent or more from his gross income for these years, thus, the statute of limitations is extended to six years. Notwithstanding the expanded limitation period, the IRS failed to timely issue a notice of deficiency for 1985 and its claim for penalties for 1985 is barred. The limitation period for 1986 and 1987 was suspended by debtor's

bankruptcy filing, and the tax and penalty claims for those years are allowed. Interest accrues from the last date a return is required to be filed, and the IRS claims for interest for all three years are allowed.

The Court will enter a separate order consistent with these findings of fact and conclusions of law.[3]

3. The allowed amount of claim 28 is:

