### Victor J. CHANEY and Judy C. Chaney, Plaintiffs,

v.

### UNITED STATES, Defendant.

No. 98–182T.

United States Court of Federal Claims.

Nov. 30, 1999.

---

Victor J. Chaney & Judy C. Chaney, Windsor, California, pro se.

Elizabeth D. Seward, Tax Division, United States Department of Justice, Court of Federal Claims Section, Washington, D.C., with whom was Mildred L. Seidman, Chief, Court of Federal Claims Section, attorneys of record for the defendant.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

Victor J. and Judy C. Chaney have brought an action concerning the correct classification of certain business expenses for the 1991, 1993, and 1994 tax years. In 1991, plaintiff Victor J. Chaney sold insurance for the State Farm Insurance Company and reported income and expenses from the sales on Schedule C of his 1991 United States Federal income tax return. Plaintiffs timely filed a joint United States individual income tax return for 1991 and paid a $9,167.00 tax on April 6, 1992.

In November 1993, according to the plaintiffs, an Internal Revenue Service (IRS) appeals officer in the Ogden, Utah office, Pamela Pringle,[1] advised the plaintiffs to amend the income and expense Schedule C of their 1991, 1993 and 1994 tax returns to a Schedule A income and expense report. The plain-

tiffs argue that they accepted the suggestion of the appeals officer and promptly filed an amended return for the 1991 tax year on November 16, 1993, reporting the income and expenses on Schedule A, and paying an additional tax of $5,127.00 and interest of $561.00.[2] On May 24, 1994, plaintiffs paid additional interest of $69.84 on the revised 1991 return.[3]

In late 1995, according to the plaintiffs, the same Ogden, Utah, appeals officer, Pamela Pringle, contacted the plaintiffs, advising them to amend their 1991 tax return again. Allegedly, Ms. Pringle suggested that the plaintiffs should change the Schedule A income and expenses back to Schedule C. Upon receiving this recommendation, plaintiffs contacted an IRS appeals officer in San Francisco, Joseph L. Martucci, for a second opinion. The plaintiff, Victor Chaney, previously had met Mr. Martucci at a social golf outing. According to the plaintiffs, Mr. Martucci indicated that they had until November 1996 to file an amended 1991 return because of the date of the first amended return, was filed in November 1993. A sworn statement by Mr. Martucci, offered by the defendant, maintains that he recalled receiving one or two phone calls from the plaintiff Victor Chaney and one call from Judy Chaney, in which he responded generally to their questions, but could not recall the questions or the answers. However, Mr. Martucci further stated he would not have given the plaintiffs definitive statements concerning their tax situation, especially a statute of limitations question, because he had never reviewed the Chaneys' tax returns, either officially or unofficially.

The plaintiffs amended their tax return once again and claimed a refund on overpaid taxes of $5,127.00. The amended return was received by the IRS on January 12, 1996. The plaintiffs maintain that they relied on San Francisco appeals officer Martucci's

---

1. In its Motion to Dismiss, the defendant maintains they are unable to locate Pamela Pringle since she left the Ogden, Utah, IRS office.

2. Plaintiffs' complaint does not assert a claim for the $561.00.

3. In its brief, defendant does not contest plaintiffs' recovery of the $69.84 paid on May 24, 1994, as follows: "The only payment of 1991 taxes that plaintiffs are not precluded from recovering is the $69.84 paid on May 24, 1994, within two years of filing their claim." Therefore, defendant has conceded jurisdiction regarding the $69.84.

statements to them that the statute of limitations for the 1991 tax year did not apply because they had amended the 1991 return in November of 1993. In a letter dated March 18, 1996, the IRS denied the plaintiffs' requested refund of $5,127.00 in taxes paid on November 16, 1993. The IRS denied plaintiffs' claim and concluded that based on 26 U.S.C. § 6511(a) (1994)[4] the statute of limitations already had expired when the plaintiffs filed their request for a refund on January 12, 1996 for the 1991 tax year because the plaintiffs had not filed their refund claim within three years of the initial tax filing on April 6, 1992, for the 1991 tax period. Additionally, the filing of the refund claim with the IRS occurred more then two years after the November 16, 1993, payment of the tax on which plaintiffs claim a refund. Plaintiffs, therefore, filed a *pro se* complaint in this court, to which the defendant ultimately responded.

## DISCUSSION

The court considers defendant's motion to dismiss in part pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), for lack of subject matter jurisdiction. The defendant contends that this court does not have jurisdiction to consider plaintiffs' tax refund claim because the plaintiffs filed their tax return for tax year 1991 on April 6, 1992, commencing the time from which to calculate the applicable three-year statute of limitations pursuant to I.R.C. § 6511(a) (1994). Thus, according to the defendant, the three-year statute of limitations ended in April 1995, barring the refund claim filed on January 12, 1996. Also, according to the defendant, Victor and Judy Chaney filed their amended return with the tax payment on November 16, 1993, thus

commencing the running of the applicable two-year statute of limitations on taxes paid, pursuant to I.R.C. § 6511(a), which ended on November 16, 1995. Their payment of $69.84 in additional interest did not alter that date. Therefore, the defendant argues that the two-year statute of limitations also expired before plaintiffs filed their claim with the IRS on January 12, 1996, when they once again amended their return to a Schedule C filing.

Plaintiffs argue that the three-year statute of limitations which governs civil actions for overpayment of taxes does not bar recovery with respect to their January 12, 1996 refund suit for the 1991 tax year. Plaintiffs assert that their amended 1991 tax return, dated November 16, 1993, began anew the three-year statute of limitations. Alternatively, the plaintiffs assert that because of their reliance on Ms. Pringle's and Mr. Martucci's advice to amend their tax return, the IRS should be estopped from denying their refund claim. The plaintiffs offer the alleged statement to them by appeals officer Mr. Martucci as supportive of their argument. The plaintiffs argue that Mr. Martucci assured them that the refund claim would be timely up to November 16, 1996, ten months after the Chaneys filed their refund claim.

The defendant has filed its motion to dismiss pursuant to RCFC 12(b)(1) of the United States Court of Federal Claims for lack of subject matter jurisdiction. Subject matter jurisdiction may be challenged at any time by the parties, by the court sua sponte, or on appeal. *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir.1993); *United States v. Newport News Shipbuilding & Dry Dock Co.,* 933 F.2d 996, 998 n. 1 (Fed.Cir.1991).

4. *Limitation on credit or refund*

(a) Period of limitation on filing a claim. Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be

paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

(b) Limitation on Allowance of Credits and Refunds

(1) Filing of claim within prescribed period. No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

26 U.S.C. § 6511 (hereinafter I.R.C. § 6511).

Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178, 1996 WL 285759 (Fed.Cir.1996). When construing the pleadings pursuant to a motion to dismiss, the court should not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Son Broadcasting, Inc. v. United States*, 42 Fed. Cl. 532, 537 (1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted)).

Pursuant to RCFC 8(a)(1) and Federal Rule of Civil Procedure 8(a)(1), a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.1997). The pleadings of *pro se* plaintiffs can be held to less stringent standards than formal pleadings drafted by lawyers. *Boyle v. United States*, 44 Fed.Cl. 60, 61 (1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

When deciding on a motion to dismiss based on either lack of subject matter jurisdiction or failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiffs' favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Henke v. United States*, 60 F.3d 795, 797

(Fed.Cir.1995); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989). If a defendant challenges jurisdiction or the plaintiffs' claim for relief, however, the plaintiffs cannot rely merely on allegations in the complaint but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. at 189, 56 S.Ct. 780; *see also Land, Chairman, United States Maritime Comm'n v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 747; *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404–05 (1994). The court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matters outside the pleadings. *Indium Corp. of Am. v. Semi–Alloys, Inc.*, 781 F.2d 879, 884 (Fed.Cir.1985).

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiffs identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. § 1491 (1994 & Supp. III 1997). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) for a refund from a prior payment made to the government; or (3) based on federal constitutional, statutory, or regulatory law. *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605–06, 372 F.2d 1002 (1967)); *see also Palmer v. United States*, 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson Lyons & Bustamante, P.A. v. United States*, 33 Fed.

Cl. 474, 478 (1995). A waiver of traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir. 1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; "it does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980) (quoting *United States v. Testan,* 424 U.S. at 398–99, 96 S.Ct. 948); *see also Saraco v. United States,* 61 F.3d at 865 (citing *In Zumerling v. Devine,* 769 F.2d 745, 749 (Fed.Cir.1985) (citing *United States v. Testan,* 424 U.S. at 398, 96 S.Ct. 948)); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. For claims founded on a statute or regulation to be successful, "the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009); *see also John Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir. 1996).

In the case of a civil action for the recovery of a tax refund, this court shall have original jurisdiction pursuant to 28 U.S.C. § 1491(a). Sovereign immunity is waived in a tax refund case when the claim is "duly filed" with the IRS. I.R.C. § 7422(a) (1994);[5] *United States v. Michel,* 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598 (1931); *see also Hampton v. United States,* 206 Ct.Cl. 422, 513 F.2d 1234, *cert. denied,* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975); *Sun Chem. Corp. v. United States,* 698 F.2d 1203, 1206 (Fed.Cir.), *cert. denied,* 464 U.S. 819, 104 S.Ct. 81, 78 L.Ed.2d 91 (1983). A claim for a tax refund, however, is not duly filed pursuant to I.R.C. § 7422(a) unless it is filed within the time allotted under I.R.C. § 6511(a).

The plaintiffs in this case argue that the United States Court of Federal Claims has jurisdiction over their civil action for a tax refund based upon 28 U.S.C. § 1346(a)(1) (1994),[6] I.R.C. § 6511 and I.R.C. § 7422(a). The defendant responds, however, that plaintiffs' claim is time barred pursuant to I.R.C. § 6511(a) because the claim was not timely filed. Therefore, according to the defendant, the court must grant partial dismissal of plaintiffs' lawsuit regarding their 1991 tax refund claim for lack of subject matter jurisdiction. Plaintiffs respond that because they relied on the advice of appeals officers within the IRS, the IRS should be estopped from denying relief. Plaintiffs allege that as a result of following the advice of Ms. Pringle they amended their 1991 taxes and paid an additional $5,127.00, and that two years later, IRS appeals officer Martucci counseled the plaintiffs again to amend their taxes, and assured them that they would be entitled to a refund.

The first issue presented to this court, therefore, is whether the three-year statute of limitations for filing began on April 6,

---

**5.** The provisions of I.R.C. § 7422(a) state:

(a) No suit prior to filing claim for refund.
No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for a refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

**6.** The provisions of 28 U.S.C. § 1346(a)(1) state:

(a) The district court shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority, or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws; . . . .

1992, the initial filing date for the 1991 tax year, or November 16, 1993, the filing date of the amended return.[7] The second question is whether the plaintiffs' dependance on information allegedly provided by the IRS appeals officers can estop the IRS from denying the plaintiffs' claim.

 The initial conflict between the plaintiffs and the defendant revolves around interpretation of the phrase, a claim for refund "shall be filed by the taxpayer within 3 years from the time the return was filed," as used in I.R.C. § 6511(a). The plaintiffs assert that November 16, 1993, the date of filling the amended return, is the date which should start the three-year statute of limitations of I.R.C. § 6511(a).[8] Such conflict must be resolved in accordance with accepted rules of statutory construction. The United States Court of Appeals for the Federal Circuit has offered guidance on how to approach statutory interpretation, as follows:

> Statutory construction requires the application of recognized rules. *See generally Sutherland Statutory Construction* (4th ed.). First, " ' "[t]he starting point in every case involving construction of a statute is the language itself." ' " *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978). Second, where a statute states what a term "means" then all other meanings not stated are excluded. *Colautti v. Franklin*, 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684 n. 10, 58 L.Ed.2d 596 (1979). Third, clear evidence of legislative intent prevails over other principles of statutory construction. *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). Fourth, absent a very clear legislative intent, the plain meaning will prevail. *Aaron v. SEC*, 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980). Last, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978); *National Lead Co. v. United States*, 252 U.S. 140, 146–47, 40 S.Ct. 237, 239, 64 L.Ed. 496 (1920); *Farrell Lines, Inc. v. United States*, 499 F.2d 587, 605, 204 Ct.Cl. 482 (1974); *cf. Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

*Johns–Manville Corp. v. United States*, 855 F.2d 1556, 1559 (Fed.Cir.1988), *cert. denied*, 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Thus, if a statute is plain and unequivocal on its face, there is no need to resort to the legislative history underlying the statute. *Reid v. Dep't of Commerce*, 793 F.2d 277, 281 (Fed.Cir.1986) (citing *United States v. Oregon*, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961), *reh'g denied*, 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961)). Furthermore, a court should resort to legislative history only if:

> [A] literal interpretation would lead to an incongruous result. For example, if a literal reading of the statute would impute to Congress an irrational purpose, *United States v. Bryan*, 339 U.S. 323, 338, 70 S.Ct. 724, 734, 94 L.Ed. 884 (1950), or would thwart the obvious purposes of the statute, *Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978), or would lead to a result at variance with the policy of the legislation as a whole, *Trustee[s] of Indiana University v. United States*, 618 F.2d 736, 739, 223 Ct.Cl. 88, 94 (1980), then literal interpretation will be eschewed in favor of resort to the legislative history to ascertain the intent of Congress. *United States v. Oregon*, 366 U.S. at 648, 81 S.Ct. at 1281; 2A Sands 46.07.

---

7. The court need not consider the effect of the two-year statute of limitations in I.R.C. § 6511(a) on the November 16, 1993 tax payment because the two years expired on November 16, 1995, almost two months before plaintiffs filed their claim.

8. The plaintiffs attempt to support their position with the statement allegedly made by appeals officer Martucci with the San Francisco Internal Revenue Office that the plaintiffs "had until Nov. 1996 to file an amended return on 1991 because of the date of the first amended return, which was Nov. 1993."

*Reid v. Department of Commerce,* 793 F.2d at 281–82.

Accepted principles of statutory construction also provide that courts must interpret a statute as a whole. *Massachusetts v. Morash,* 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989). To this effect, the Supreme Court has written:

> On numerous occasions we have noted that " ' " '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' " ' " *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), quoting *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 221, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) (quoting *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 285, 76 S.Ct. 349, 100 L.Ed. 309 (1956) (in turn quoting *United States v. Heirs of Boisdore,* 8 How. 113, 122, 12 L.Ed. 1009 (1850))).

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *see* Sutherland Stat. Const. 46.05, 46.06 (5th ed.1992). Courts must " 'give effect, if possible, to every clause and word of a statute,' " *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (quoting *Montclair Tp. v. Ramsdell,* 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883)), for " '[t]he cardinal principle of statutory construction is to save and not to destroy.' " *Id.* (quoting *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 30, 57 S.Ct. 615, 81 L.Ed. 893 (1937)).

Furthermore, in construing a statute, courts should attempt not to interpret a provision such that it renders other provisions of the same statute inconsistent, meaningless or superfluous. *Boise Cascade Corp. v. United States EPA,* 942 F.2d 1427, 1432 (9th Cir.1991). *See Sutherland Stat. Const.* 46.06 (5th ed.1992). The meaning of statutory language depends on context and a statute should be read as a whole. *Bailey v. United States,* 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); *King v. Saint Vincent's Hosp.,* 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (citing *Shell Oil Co. v. Iowa Dept. of Revenue,* 488 U.S. 19, 26, 109 S.Ct. 278, 102 L.Ed.2d 186 (1988)).

"Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used." *King v. Saint Vincent's Hosp.,* 502 U.S. at 221, 112 S.Ct. 570 (quoting *NLRB v. Federbush Co.,* 121 F.2d 954, 957 (2d Cir.1941) (L.Hand, J.)). Therefore, when reviewing a statute, this court must construe each section in connection with each of the other sections, so as to produce a harmonious whole.

The issue of whether a particular tax filing constitutes a filing for statute of limitations purposes is not a new one. The language of I.R.C. § 6511(a) indicates that the three-year statute of limitations commences "from the time the return was filed." The statute states:

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires later, . . . .

I.R.C. § 6511(a).

The commencement date for initiating the running of the statute of limitations has been interpreted by the United States Supreme Court, in *Zellerbach Paper Co. v. Helvering,* 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934), to mean that, "[t]he return exacted by the statute, the one that in the absence of fraud is to start the term of limitation . . . is the return filed by the taxpayer at the close of the fiscal year, though supplementary information may modify or add to it." *Id.* at 177–78, 55 S.Ct. 127; *see also Badaracco v. Commissioner,* 464 U.S. 386, 393–97, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) (and cases cited therein); *Clifton Mfg. Co. v. United States,* 293 U.S. 186, 186–88, 55 S.Ct. 133, 79 L.Ed. 276 (1934); *In re Grassgreen,* 172 B.R. 383, 390 (Bankr.M.D.Fla.1994) (No. 93–640–BKC–3PL); *see also Bufferd v. Commissioner,* 506 U.S. 523, 533, 113 S.Ct. 927, 122 L.Ed.2d 306 (1993) (holding that the limitations period for assessing tax liability of the

shareholder began to run from the filing date of the original individual return).

■ Statutes of limitations "are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary." *Kavanagh v. Noble*, 332 U.S. 535, 539, 68 S.Ct. 235, 92 L.Ed. 150 (1947) (citing *Rosenman v. United States*, 323 U.S. 658, 661, 65 S.Ct. 536, 89 L.Ed. 535 (1945)), *reh'g denied*, 333 U.S. 850, 68 S.Ct. 656, 92 L.Ed. 1132 (1948). As noted above, the statute of limitations time periods set out by I.R.C. § 6511(a) are three years from the time of the filing of the original return or two years from the time of the tax payment, whichever is later.

The plaintiffs next argue the IRS should be equitably estopped from denying their claim for a refund after Mr. and Mrs. Chaney followed advice which they assert they obtained from IRS officials Pringle and Martucci. Moreover, plaintiffs assert that following the erroneous advice of Ms. Pringle led to the overpayment of taxes of which they are now being denied recovery. According to the plaintiffs, appeals officer Martucci represented the IRS when he told the plaintiffs they could recover the overpayment and that their claim would be timely.

Defendant contends that the statutory language of I.R.C. § 6511(a) must be strictly read to prohibit the introduction of equitable principles into statute of limitations legislation. Moreover, defendant argues that the opinions and statements of IRS employees should not be allowed to override the clear requirements of the statute, especially in the case of Mr. Martucci, who neither reviewed plaintiffs' return nor was assigned any administrative responsibility for their claims. In support of its position, the government directs the court's attention to numerous court decisions.[9]

■ The doctrine of equitable estoppel is a judicial remedy by which a party may be precluded, by its own acts or omissions, from asserting a right to which it otherwise would have been entitled. *See Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). Although the United States Supreme Court in *Heckler* did not come to a final conclusion as to whether equitable estoppel could be raised against the United States, the Supreme Court appears to suggest that there are limited circumstances in which equitable estoppel is applicable against the sovereign. *Id.* at 60, 104 S.Ct. 2218. The Supreme Court stated in *Heckler*:

When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant. Petitioner urges us to expand this principle into a flat rule that estoppel may not in any circumstances run against the Government. We have left the issue open in the past, and do so again today. Though the arguments the Government advances for the rule are substantial, we are hesitant, when it is unnecessary to decide this case, to say that there are *no cases* in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government. But however heavy the burden might be when an estoppel is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present.

*Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. at 60–61, 104 S.Ct. 2218 (footnotes omitted) (emphasis in original). Thus, when a plaintiff claims equitable estoppel against the government, in

9. See *United States v. Brockamp*, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997); *Akin v. United States*, 31 Fed.Cl. 89, *aff'd*, 43 F.3d 1487, 1994 WL 706024 (Fed.Cir.1994); *Kingston Prods. v. United States*, 177 Ct.Cl. 471, 368 F.2d 281 (1966); *Joseph v. IRS*, 637 F.Supp. 1219 (D.Mass.1983); *Colemen v. United States*, 82–1 Tax Cas. (CCH) ¶ 9133 at 83, 111 (E.D.Ky.1981), *rev'd on other grounds*, 704 F.2d 326 (6th Cir. 1983).

order to warrant judicial intervention and prevail, the party invoking the doctrine against the United States bears a heavy burden to prove the elements of estoppel and that "the private party surely cannot prevail without at least demonstrating that the traditional elements of estoppel are present." *Id.* at 61, 104 S.Ct. 2218; *see also Last v. United States,* 37 Fed.Cl. 1, 10 (1996) ("[c]ourts have consistently applied the doctrine of equitable estoppel against the government with the utmost caution and restraint."); *Estate of Akin v. United States,* 31 Fed.Cl. 89, 96 (1994) (courts rarely apply equitable estoppel against the United States government) (citing *Boulez v. Commissioner,* 76 T.C. 209, 215, 1981 WL 11356 (1981), *aff'd,* 810 F.2d 209 (D.C.Cir.), *cert. denied,* 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987)); *Fredericks v. Commissioner,* 126 F.3d 433, 438 (3rd Cir.1997) (imposing an additional burden on claimants to establish some affirmative misconduct on the part of the government official); *Bokum v. Commissioner,* 992 F.2d 1136, 1141 (11th Cir.1993) (stating that although the Supreme Court has reversed every finding of estoppel against the government that has come before it, it has not adopted a rule prohibiting estoppel claims against the government).

 For recovery against the government based on estoppel, the plaintiffs must prove the following: (1) a misrepresentation by an agent of the United States acting within the apparent scope of his or her duties; (2) the absence of contrary knowledge by the taxpayer in circumstances where he may reasonably act in reliance; (3) actual reliance; (4) detriment; and (5) a factual context in which the absence of equitable relief would be unconscionable. *See Last v. United States,* 37 Fed.Cl. at 10 (quoting *Rocovich v. United States,* 18 Cl.Ct. 418, 424 (1989)); *see also Henry v. United States,* 14 Cl.Ct. 795, 799, 1988 WL 46461 (1988), *aff'd,* 870 F.2d 634 (Fed.Cir.1989). Even if the plaintiffs could show that the IRS employees actually misrepresented information to the plaintiffs, plaintiffs must further demonstrate that the alleged deception was within the apparent scope of those agents' power. A claim that is based on the misrepresentations of a government agent will only succeed if

the agent acted within the general scope of his or her duties.

The principle underlying this rule is that when a government official engages in ultra vires conduct, the official "will not, in any legal or constitutional sense, represent the United States, and what he does or omits to do, without the authority of Congress, cannot create a claim against the Government 'founded upon the Constitution.'" *Hooe v. United States,* 218 U.S. 322, 335, 31 S.Ct. 85, 54 L.Ed. 1055 (1910).

*Del–Rio Drilling Programs Inc. v. United States,* 146 F.3d 1358, 1362 (Fed.Cir.1998). Under federal law, appeals officers do not have the authority to extend a statute of limitations applicable to tax refund or any other claims prescribed by the I.R.C. § 6511(a), or to alter the terms of the government's waiver of sovereign immunity.

The United States Supreme Court explained *in Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), that when individuals rely on a government employee, they are charged with knowing the extent of the employee's authority and the rules and regulations of the Code of Federal Regulations. *Id.* at 384, 68 S.Ct. 1. Accordingly, an appeals officer's authority cannot extend the statute of limitations or provide alternative opportunities for tax refund cases not allowed by law. 26 C.F.R. § 601.106(a)(1)(ii)(a) (1999).

Plaintiffs' complaint alleges:
WE HAVE WORKED WITH THE OGDEN APPEALS OFFICE FOR 1990'S RETURNS. IT WAS AGREED THAT WE SHOULD AMEND THE YEARS 1991–1994 TO SCHEDULE C. WE SUBMITTED THE AMENDED RETURNS IN JAN. 1996. WE HAVE SINCE BEEN IGNORED, THREATENED AND TREATED UNBELIEVABLY RUDE BY MANY I.R.S. EMPLOYEES. WE EXHAUSTED EVERY EFFORT TO RESOLVE THIS WITH I.R.S.

In the instant case, plaintiffs' allegations of misrepresentations are not supportable, in the case of Mr. Martucci, who, in a signed declaration, denies having made the alleged

statements and who, regardless, was without authority to extend an applicable statute of limitations, and with regard to Ms. Pringle who, likewise, was without authority to guarantee to plaintiffs that they could avoid the imposition of penalties or recover a refund. Moreover, no supportive documents are attached to plaintiffs' complaint to validate the allegations regarding the assurances allegedly given to them. The only documents attached to the complaint are two letters of disallowance by the I.R.S. of a claim for $5,127.00 for tax year 1991, $4,432.00 for tax year 1993 and $658.00 for tax year 1994. Furthermore, plaintiffs' response to defendant's motion to dismiss, also without documentation, includes the following comment:

> There are five and a half years that we have been working with, 1990 thru [sic] July 1995. In November 1993 when we were working with the appeals office in Ogden, Utah on the 1990 return, we were advised by appeals officer Ms. P. Pringle to amended [sic] 1991 and 1992 returns to schedule "A" and to file 1993 and 1994 on schedule "A" to avoid any possible penalties, until the court made a ruling on these cases. We won the 1990 appeal in late 1994. In late 1995 we received a telephone call from Ms. Pringle telling us to re-amend 1991 thru [sic] 1994 returns on schedule "C" because the courts were ruling in favor of the taxpayers in these cases. Later that day she FAX [sic] us supporting cases. We became concerned about the time line on these cases and talked with the San Francisco office of appeals in Dec. 1995,[10] appeals officer Mr. L. Mr. Martucci, he told us we had until Nov. 1996 to file an amended return on 1991 because of the date of the first amended return, which was Nov. 1993. In view of his advice we again went to the expense to amended [sic] 1991 thru [sic] 1994.

Attached to the reply filed by the defendant in support of its motion for partial dismissal of the complaint is the Declaration of Mr. Joseph Martucci. In his declaration, Mr. Martucci indicates that he met Victor Chaney at a golf club around September 1996 and that he never has met Judy Chaney. He also indicates that he received "one or two" phone calls from Victor Chaney, but no longer recalls the questions or answers. He also states, however, that:

> I have read the Chaney's [sic] response to the Government's motion to dismiss in part. I have never reviewed the Chaney's [sic] tax returns, either officially or unofficially. I had no administrative responsibility at the IRS with respect to the Chaney's [sic] tax liabilities for the years in issue in this suit—or for any other years.

> In my work as a revenue agent, in my service as an IRS manager, and in teaching revenue agents over the course of many years, I have always been extremely cautious about statute of limitations questions. I would not give a definitive answer about a statute of limitations issue without researching the matter and reviewing the pertinent taxpayer documents.

In sum, although it is evident from their filings that the plaintiffs are clearly frustrated by their dealings with the IRS, their allegations regarding Mr. Martucci and Ms. Pringle do not support plaintiffs' allegations of a misrepresentation by an agent of the government within the scope of his or her authority, and in the case of Mr. Martucci are refuted by his declaration filed with the court. Moreover, neither Ms. Pringle nor Mr. Martucci could insulate plaintiffs from the provisions of the tax code or applicable statute of limitations provisions.

Due to the consistently strict application of the applicable statute of limitations in tax refund claims, plaintiffs are precluded from relying on equitable estoppel in order to extend the statute of limitations against the IRS. The United States Supreme Court wrote in *United States v. Brockamp*, 519 U.S. 347, 352, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997):

> Section 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken

---

**10.** The court notes that in December, 1995, the later statute of limitations (the two year period) had already expired on November 16, 1995.

together indicate to us that Congress did not intend courts to read other unmentioned, open-ended, "equitable" exceptions into the statute that it wrote. There are no counter-indications. Tax law, after all, is not normally characterized by case-specific exceptions reflecting individualized equities.

*See RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461 (Fed.Cir.1998) (concluding that "an implied equitable exception must be found in the statute of limitations before equitable principles may be applied to a waiver of sovereign immunity."); *Lovett v. United States,* 81 F.3d 143, 145 (Fed.Cir. 1996) (applying the rule that the period of limitations will not be tolled for filing a claim for refund of a tax that has been paid or overpaid in error). The Supreme Court in Brockamp also rested its decision on the prudential concerns Congress took into account when establishing the two part limitations of 6511(a):

> The IRS processes more than 200 million tax returns each year. It issues more than 90 million refunds. To read an "equitable tolling" exception into 6511 could create serious administrative problems by forcing the IRS to respond to, and perhaps litigate, large numbers of late claims, accompanied by requests for "equitable tolling" which, upon close inspection, might turn out to lack sufficient equitable justification.

*United States v. Brockamp,* 519 U.S. at 352, 117 S.Ct. 849 (citations omitted).

### CONCLUSION

The court finds that the plaintiffs' claim for a tax refund for 1991 was filed after the applicable statute of limitations had run. Therefore, the court **GRANTS** the defendant's motion to partially dismiss pursuant to RCFC 12(b)(1). Jurisdiction is proper regarding the $69.84 paid by the plaintiffs for the 1991 tax year. Plaintiffs' claims regarding the tax years 1993 and 1994 also remain to be resolved.

**IT IS SO ORDERED.**